## JOSEPH BERGFELD v. KANSAS CITY RAILWAYS COMPANY, Appellant.

### Division Two, December 30, 1920.

1. **NEGLIGENCE: General Allegation: Instruction for Specific Negligence.** If the allegation of negligence is general, an instruction authorizing a recovery on the finding of any specific acts of negligence, proven by the evidence and coming within the general statement, is permissible. So that where the petition charged that the street car attempted to cross a railroad track and in doing so went in front of a freight train, by which it was knocked from the track and plaintiff (a passenger) was severely injured, and that "the collision and injuries were caused by the carelessness and negligence of the servants of defendant street railway operating said street car," its allegations of negligence were general, not specific; and an instruction which permitted plaintiff to recover if defendant's servants, in the exercise of proper care before crossing the railroad track, could have ascertained if a train was closely approaching and proceeded to cross without doing so, was within the general allegation, and not erroneous.

2. ———: **General and Specific Allegation: Servants.** An allegation that the collision and plaintiff's injuries "were caused by the carelessness and negligence of the defendants, Durham and Harvey, receivers of the Metropolitan Street Railway Company, their servants, agents and employees operating said street car," does

not charge specific negligence. In order to allege specific negligence, the averment must point out, not only the particular servant of whose negligence complaint is made, but also in what manner they, or some of them, were negligent.

3. ———: ———: **In Operating Car.** An allegation that plaintiff was injured by the negligence of defendant "in operating said street car," as distinguished from negligence in using a defective track or defective machinery, is general, but limited to a particular subject. The petition may describe the general circumstances of the incident, the agency or instrumentality of the defendant through which the injury occurred, without the pleader being able to point out the particular act or defect which caused it; in such case, the allegation is general, but limited in scope; it confines the issues to a definite field, without specifying the definite act.

4. ———: **Street Car: Crossing Railroad: Instruction: Invited by Defendant.** The defendant cannot complain of an instruction telling the jury that even though they might find that the servants of the railroad in charge of the train which collided with defendant's street car were guilty of negligence, that did not relieve the defendant's employees from their duty to properly care for the safety of plaintiff, a passenger on the street car, where defendant, by the evidence it had introduced, had invited the instruction.

5. ———: **Instruction: Flagging Car: Definition.** The verb "flag" does not necessarily imply the use of a flag. In its secondary sense it signifies a signal given as with a flag, which may be done as by a waving of the hand. In common railway parlance the words "to flag said crossing" may mean that the conductor of a street car, as it approached a railroad track, was to go forward to the crossing and ascertain if the car could safely proceed, and if so, to wave to the motorman in the usual way to come on; and where all the evidence shows that the word "flag" was used in that sense, it is not error to instruct the jury that if defendants in charge of the street car failed "to flag said crossing," etc.

6. ———: **Permanent Disabilities: Pleading.** A petition alleging that "the plaintiff received painful and permanent injuries," and then proceeds to specify the injuries as a fracture of the bones of his leg, severe injuries to his internal organs and nervous system, that his ears were caused to bleed and his hearing impaired, and that his right leg was bent and deformed, justify an instruction telling the jury, in estimating plaintiff's damages, to take into consideration any "permanent disabilities which the evidence shows he has reasonably and certainly suffered."

7. ———: **Excessive Verdict: $10,000.** Plaintiff, a passenger on a street car, at the time he was injured, was fifty years old and earning thirty-four dollars per week; for twenty-two months after he was injured he was unable to walk; his right leg was crushed; the skin was torn from the leg from the knee to the ankle and the covering of the bone was exposed for about four inches; portions of the bones of his leg were destroyed, and sloughed off during the healing process; some of his ribs were fractured; he suffered great pain, and the injuries are permanent. *Held*, that a verdict for ten thousand dollars was not excessive.

Appeal from Jackson Circuit Court.—*Hon. Daniel E. Bird, Judge.*

Affirmed.

*R. J. Higgins* and *Ben T. Hardin* for appellant.

(1) The court below erred in giving to the jury instruction numbered 1, for the plaintiff. It broadens the issues made by the pleadings. Zasemowich v. Am. Mfg. Co., 213 S. W. 802; State ex rel. v. Ellison, 270 Mo. 653; State ex rel. v. Ellison, 213 S. W. 461; State ex rel. v. Ellison, 176 S. W. 13; Applegate v. Railway, 252 Mo. 197; Schumacher v. Breweries Co., 247 Mo. 162; Degonia v. Railway, 224 Mo. 589; Hufft v. Railway, 222 Mo. 302; Price v. Met. St. Ry., 220 Mo. 454; Black v. Railway, 217 Mo. 685, 687; Beave v. Transit Co., 212 Mo. 351; Davidson v. Transit Co., 211 Mo. 361; Kirkpatrick v. Street Ry., 211 Mo. 83; McGrath v. Transit Co., 197 Mo. 105; Moore v. Street Ry., 142 Mo. App. 294. The plaintiff's petition in this case pleads specific negligence. The instruction tells the jury that "the due obligation of the receivers, their agents, servants and employees to the plaintiff was to use the highest degree of care practicable among prudent, skillful and experienced men in that same kind of business, to carry him safely." Said instruction singles out certain parts of the evidence, and comments thereon, leaving out and excluding other parts thereof, and requires the jury to find the ultimate fact

of liability thereon.   Eckhard v. Transit Co., 190 Mo. 620; Railroad v. Stock Yards, 120 Mo. 565; Forrester v. Moore, 77 Mo. 659; Crews v. Lackland, 67 Mo. 621.   (2) The court erred in giving to the jury instruction numbered 2, for the plaintiff.   It broadens the issues made by the pleadings.   It went far beyond the limits of the petition.   Zasemowich v. Am. Mfg. Co., 213 S. W. 802; State ex rel. v. Ellison, 270 Mo. 653; Hufft v. Railway, 222 Mo. 302; Price v. Met. St. Ry., 220 Mo. 454; Black v. Railway, 217 Mo. 685; Beave v. Transit Co., 212 Mo. 351. (3)   The court below erred in giving to the jury instruction numbered 3, for the plaintiff.   (a)   It is entirely outside the issues made by the petition.   There is no mention of any negligence of the Chicago, Rock Island & Pacific Railway Company, its agents, servants and employees, in plaintiff's petition.   (b)   The instruction singles out and comments upon the question of the negligence of the Rock Island Company, when no such issue was pleaded in the petition.   (c)   The instruction singles out the question of duty of "the agents, servants and employees in charge of the street car in question," comments upon and argues that question, and then tells the jury that if said agents, servants and employees "were negligent in any of the particulars set out in instructions numbered 1 and 2," then the plaintiff is entitled to recover from this defendant.   No jury could understand such an instruction.   (d)   The instruction then proceeds to argue to the jury the proposition that even though they may find that the Rock Island Company, "its agents, servants and employees in charge of its train in question may have been guilty of negligence," in any degree, however gross, and in whatever way imaginable, "yet that did not relieve the agents, servants and employees of defendant from their duty to use that degree of care for plaintiff's safety, set out in the other instructions given you."   Spohn v. Mo. Pac. Ry., 87 Mo. 82; Forrester v. Moore, 77 Mo. 660; Rothschild v. Am. Ins. Co., 62 Mo. 361; Jones v. Jones, 57 Mo. 142; Weil v. Schwartz, 21 Mo. App. 382; Flannery v. Railway, 44 Mo.

285 Mo.—42

App. 400; McClure v. School District, 66 Mo. App. 89; Melican v. Electric Co., 90 Mo. App. 602. (4) The trial court erred in giving to the jury instruction numbered 5, for the plaintiff. (a) The instruction, in the second paragraph thereof, allows the jury to "take into consideration permanent disabilities," when nothing of the kind is pleaded in the petition. (b) Again, the instruction, in the last paragraph thereof, uses this language: "After considering all these elements, you may allow plaintiff such a sum as damages," etc. In paragraphs first, second and third, all these elements had been mentioned and submitted to the jury. The language above quoted clearly assumed the existence of all the elements previously mentioned. If so, then the giving of the instruction was reversible error. Hunt v. City of St. Louis, 211 S. W. 677; Henson v. Kansas City, 210 S. W. 17; Ganey v. Kansas City, 259 Mo. 663; Ellis v. Street Ry., 234 Mo. 675; Crow v. Railway, 212 Mo. 610; Coffey v. Carthage, 186 Mo. 584; Wilkerson v. Eilers, 114 Mo. 252. (5) The verdict in this case is excessive and unjust, and should not be permitted to stand. State v. Webb, 254 Mo. 434; Campbell v. United Rys., 243 Mo. 161; Partello v. Railway, 240 Mo. 140; Lessenden v. Railway, 238 Mo. 265; Partello v. Railway, 217 Mo. 659; Black v. Met. St. Ry., 217 Mo. 686; Chlanda v. Transit Co., 213 Mo. 263; Gibney v. Transit Co., 204 Mo. 723; Smoot v. Kansas City, 194 Mo. 524; Ice Co. v. Tamm, 90 Mo. App. 202; Harper v. Railroad, 186 Mo. App. 308; Kelly v. Higginsville, 185 Mo. App. 59.

*Cooper, Neel & Wright* for respondent.

(1) The court below did not err in giving to the jury instruction numbered 1 for the plaintiff. It did not broaden the issues made by the pleadings. Plaintiff being a passenger and defendant a carrier, the allegations of the petition as to negligence were general. The allegation of negligence was studiously intended to be and was absolutely a general charge of negligence and can-

not be contorted into anything else. Stauffer v. Rail-road, 243 Mo. 303; Briscoe v. Met. St. Ry. Co., 222 Mo. 104; Price v. Ry. Co., 220 Mo. 435; Macdonald v. Met. St. Ry. Co., 219 Mo. 468; O'Gara v. Transit Co., 204 Mo. 732; Chlanda v. Transit Co., 213 Mo. 244; Loftus v. Met. St. Ry. Co., 220 Mo. 478.  (2)  Plaintiff's instruction 1 does not single out certain parts of the evidence and comment thereon.  (3)  The defendants sought by testimony introduced of its own, as well as the cross-examination of the employees of the Rock Island and of the plaintiff, to escape a verdict against itself by placing the blame for the collision on the employees of the Rock Island Railway Company. Of course, it was immaterial, so far as the plaintiff was concerned, whether the Rock Island was guilty of negligence or not. If the carrier, the defendant in this trial, was guilty of negligence, he was entitled to recover. This is the law. Bragg v. Met. St. Ry. Co., 192 Mo. 359.

WILLIAMSON, J.—The statement of the facts in this case and paragraphs One, Two and Four of the opinion were written by WHITE, C. Upon a motion for a rehearing, Paragraph Three, as written by the learned commissioner, failed to meet the approval of the court, and a rehearing having been granted, the case was assigned to the present writer, who has re-written the Third Paragraph, adopted the remainder of the opinion as originally written, and added the Fifth Paragraph.

"The suit in this case is for damages on account of injuries received by the plaintiff in a collision of the street car on which he was riding, with a freight train of the Chicago, Rock Island & Pacific Railway Company.

"The street car belonged to the Metropolitan Street Railway Company and was in charge of the receivers of that company; afterwards all the assets of the company were sold to the defendant company, which assumed all liability of the receivers to the plaintiff herein.

"The suit originally was against the receivers of the Metropolitan Street Railway Company and the Chicago, Rock Island & Pacific Railway Company. There was a verdict in favor of the plaintiff against the receivers for $5,500, and in favor of the defendant Rock Island Railway Company. The receivers appealed, the judgment was reversed and the cause remanded by the Kansas City Court of Appeals. Afterwards the Kansas City Railways Company was substituted as defendant, and on a second trial against it alone there was a verdict and judgment for plaintiff for $10,000, bringing the case within the jurisdiction of this court, to which appeal was then taken.

"After two o'clock in the morning on the night of April 5, 1915, the plaintiff, accompanied by his wife, took passage on what was termed the "Argentine car" of the Metropolitan Street Railway Company. This car, going west, passed over the Kaw River Bridge. There were two parallel street railway tracks at that point, and the car on which the plaintiff was riding was on the north track. About 40 or 50 feet west of the Kaw River bridge the Kansas City Southern Railway track crossed the tracks of the Street Railway Company, and about 50 or 60 feet further west the track of the Rock Island also crossed them. These railway tracks extended around a curve to the north, and the Rock Island train which struck the street car came from that direction.

"After crossing the Kaw River bridge and before reaching the Southern Railway track, the car stopped. The conductor got off, went forward to the Southern track, and "flagged the motorman across." The conductor then went forward to within ten or twelve feet of the Rock Island track, and again gave the signal for the motorman to come across. After giving the signal he walked back four or five steps and, as the car passed him, he stepped on the back end and gave two bells to indicate that he was on board. The car was about half

way across the railway track when it was struck by the
rear end of the backing freight train. The side of the
car was caved in, the seats knocked about, and the plain-
tiff was seriously injured.

"The colliding freight train contained twenty-eight
cars, the engine which propelled it being at the other
end. The evidence is conflicting as to whether proper
lights were displayed and proper signals given by the
railway company before reaching the crossing. There
is evidence that a switchman was stationed on the rear
end of the end car, that a red light was hanging on that
end, and that this switchman whistled and otherwise
signaled when he saw the street car was not going to
stop before crossing the Rock Island track; that the
train was stopped as soon as it possibly could have been
stopped after the danger to the street car was seen. The
plaintiff claims that by the exercise of care by those
operating the car the approaching train could have been
seen in time to have avoided it.

"The testimony of the motorman showed that it
was his duty to bring his car to a full stop before cross-
ing a railroad track, and that it was the duty of the con-
ductor to go ahead and ascertain if a train were ap-
proaching before signaling him to cross. There was evi-
dence further tending to show that if the conductor, in
the performance of this duty, had gone to the Rock Is-
land tracks and looked, he easily could have seen the
approaching train.

"I. The defendant complains that the petition in
this case charges specific acts of negligence; that in-
struction numbered 1, given for plaintiff, is broader
than the petition in that it permits a re-

Pleading and
Instruction.
covery for acts of negligence not pleaded.
The instruction complained of directed a
verdict for the plaintiff if the jury should find that the
agents, servants and employees of the defendant, in the

exercise of proper care before crossing the switch track, could have ascertained if there was any train closely approaching and proceeded to cross said switch track without doing so; and while crossing same the street car collided with a freight train of the Rock Island Company, and if the failure to ascertain if a train was closely approaching was negligence and the direct cause of the collision, and the plaintiff was injured thereby.

"The allegation of the petition as to negligence is as follows:

" '. . . That when said street car on which plaintiff was riding had crossed over the bridge of the Kaw River, and after said car had proceeded west a short distance, it attempted to cross some steam railway tracks while proceeding west on Kansas Avenue, and in doing so went in front of an approaching freight train of the Chicago, Rock Island & Pacific Railway Company, and was collided with and knocked from the track and plaintiff severely injured as hereinafter set out. Plaintiff further says that said collision and the injuries he received hereinafter set out were caused by the carelessness and negligence of the defendants, Robert J. Dunham and Ford F. Harvey, receivers of the Metropolitan Street Railway Company, their servants, agents and employees operating said street car.'

"If the allegation of the petiiton is general, then it would be permissible to authorize a recovery on the finding of any specific acts of negligence, proven by the evidence and coming within the general statement.

"It was said by this court in State ex rel. v. Ellison, 270 Mo. l. c. 654: 'If the evidence is not as broad and comprehensive as the issues made by the pleadings, then the instructions must be within the evidence and the pleadings and cannot be broader than the evidence.' Both the allegations of the petition and the evidence must include the particular negligence on which the re-

covery may be authorized. [Lauff v. Carpet Company, 186 Mo. App. 135; Degonia v. Railroad, 224 Mo. l c. 589.]

"The allegations of negligence in the petition in this case are general, not specific, as claimed by appellant. The leading cases where the question has arisen settle that question against the contention of the appellant. In the case of Briscoe v. Metropolitan Street Ry. Co., 222 Mo. l. c. 109, the allegation of negligence was as follows:

" 'That said injuries were caused through the carelessness and negligence of said defendant, its agents, servants or employees, in that said car was caused or permitted to come to an unusually abrupt, violent and unexpected stop or collision on or near the Kansas City Belt Line crossing whereby plaintiff was suddenly and violently thrown against the stove and upon the floor of said car.'

"That was held to be an allegation of general negligence (l. c. 113).

"In Sommers v. St. Louis Transit Co., 108 Mo. App. l. c. 321, the allegation of negligence was that 'one of said defendant's motor cars, run and operated by defendant's motorman, and in his charge as agent and servant of defendant, was carelessly and negligently caused to run up to and against said wagon with great force and violence as plaintiff was crossing said tracks in said wagon.' This was held to be an allegation of general negligence.'

"In the case of Stauffer v. Railroad, 243 Mo. l. c. 313, the allegation of negligence was that the 'agents, servants and employees of defendant in charge of said car, carelessly, negligently and unskillfully ran said car upon which plaintiff was a passenger as aforesaid, into a large steam roller which was on the track of defendant along which said car was running; . . . that said car upon which plaintiff was riding as a passenger, as

aforesaid, was negligently caused by the agents, servants and employees of defendant to collide with said steam roller with great force and violence.' The court held that was not an allegation of specific negligence. The court said. l. c. 325: 'To be sure, there is precision and specification as to what resulted from the negligence, to-wit, a collision with a steam roller, but there is no specification of the negligence itself.'

"The leading case cited and relied upon by defendant is Price v. Met. Street Railway Company, 220 Mo. 435. The court in that case, on page 454, explained the rule as follows:

" '(a) Does this petition charge specific acts of negligence? We think not. The only charge is that "the defendant carelessly, negligently caused and permitted the train on which plaintiff was riding as a passenger, to come in violent collision with another train of defendant's, said other train being on said Twelfth Street and on said incline as aforesaid; that said collision was occasioned without any fault on the part of the plaintiff, but by reason of the negligence as aforesaid of the defendant.

" 'This to our mind is a charge of general negligence. Had the petition averred a negligent collision of the two trains, and then proceeded to state that such collision was occasioned by the negligence of the gripman in the operation of the car, or the negligence of the conductor in the operation of the train, and pointed out wherein they or either of them had been negligent, or had it charged a negligent failure to use proper appliances and pointed out the insufficient appliances; or had it charged that the collision was due to some negligent condition of the track, naming and pointing out such, or other such similar specific acts, then there would have been specific negligence.'

"The appellant attempts to draw a very fine distinction between a specific allegation of negligence and an al-

legation of specific negligence, asserting the allegataion in this case that certain specifically mentioned servants were guilty of negligence, while general in form, is specific in that the negligence is limited to such servants.

"The above quotations sufficiently answer appellant's contention. In order to allege specific negligence, as said in the Price case, there must not only be an averment as to the particular servants whose negligence is complained of, but it must also be pointed out wherein they, or either of them, have been negligent.

"Where the petition avers negligence of a particular servant of the defendant, doubtless this would exclude recovery for negligence committed by some other servant. If plaintiff had merely alleged that he was injured 'by the negligence of the defendant'—the most general possible statement—the defendant would have complained because the circumstances of the injury were not pointed out. In alleging that plaintiff was injured by the negligence of the defendant 'in operating said street car, as distinguished from negligence in using a defective track or defective machinery, the allegation is general, but limited to a particular subject. The plaintiff could describe the general circumstances of the incident, the agency or instrumentality of the defendant through which the injury occurred, without being able to put his finger upon the particular act or defect which caused it. The allegation in such case is general in character, but limited in scope. It confines the issues to a definite field without specifying a definite act.

"There was no error in giving the instruction complained of.

"II. Appellant complains of an instruction which told the jury that even though they might find the Chicago, Rock Island & Pacific Railroad, through its agents, servants and employees in charge of the freight train in question, was guilty of negligence, that did not relieve the employees of the

Invited Instruction.

receivers from their duty to so care for the plaintiff's safety. In the course of the trial the appellant attempted to show that the negligence of the Rock Island Company was the cause of the injury, and introduced the original abandoned petition in which the plaintiff so alleged. It asked an instruction, which the court gave, to the effect that if the collision was the result of negligence on the part of the employees of the Rock Island Railway Company, and not because of the negligence of the men in charge of the street car, plaintiff was not entitled to recover. The instruction complained of was invited by the defendant and fully warranted by the developments in the case."

III. The appellant complains of the giving of instruction number two on behalf of the plaintiff. This instruction after requiring the jury to find the facts in relation to the operation of the street railway and the collision with the freight train, proceeds as follows:

Flagging Crossing.

"And if you further find and believe from the evidence, that Robert J. Dunham and Ford F. Harvey, receivers of the Metropolitan Street Railway Company, their agents, servants and employees, failed and neglected to flag said crossing (if you so find), and if you further find that such failure (if any, and if you so find), to flag said crossing (if you so find), was careless and negligent; and if you further find and believe from the evidence that such failure (if you find there was such failure) of Robert J. Dunham and Ford F. Harvey, receivers of the Metropolitan Street Railway Company, their agents, servants and employees, to flag such crossing (if you find and believe from the evidence that Robert J. Dunham and Ford S. Harvey, receivers of the Metropolitan Street Railway Company, their agents, servants and employees did so fail to flag said crossing) caused, or directly contributed to cause said collision; if any, and if you find and believe from the evidence that by the force of said collision, if any, plaintiff was in-

jured, then your verdict will be for the plaintiff, and against the defendant, the Kansas City Railways Company."

Some controversy has arisen in this case as to the meaning of the words "to flag said crossing" as used in this instruction. Webster gives the following as a secondary meaning of "flag" when used as a verb: "To signal to, with *or as with* a flag." (Italics ours). In common parlance the word flag when used as denoting a signal does not necessarily mean the actual use of a flag, but by figure of speech the word is used in the secondary sense above noted and signifies a signal given as with a flag, that is to say, as by a waving of the hand for the purpose of communicating information.

In the light of the testimony of numerous witnesses in this case, the word was plainly so used in the instruction a part of whch we have quoted. This testimony, even on the part of appellant's own witnesses, shows that upon approaching the crossing in question at night, it was required by a rule of the appellant that the motorman should bring his car to a stop and the conductor should go ahead and see if everything was all right and, if so, in the language of the witness, to "flag the motorman on." The conductor himself, testifying as a witness for the appellant company, stated that a rule of the company required him to "flag the crossing." It clearly appears from the testimony of various witnesses that to flag the crossing meant for the conductor to go forward to the crossing and ascertain whether or not the street car could safely proceed, and if so, then to wave to the motorman to come on, or, as the witness phrased it: "I waved my hand for him to come on."

There was substantial evidence in behalf of the respondent that on this occasion the conductor failed to perform this duty and that the collision occurred as a result of this failure. The record does not support appellant's criticism of this instruction. The instruction was properly given and appellant's contention in this respect is overruled.

"IV. Appellant complains of instruction number five regarding the measure of damages, because it authorizes the jury to take into consideration any 'permanent disabilities' which the evidence showed **Permanent Disabilities.** the plaintiff has reasonably and certainly suffered. It is complained that the petition does not allege the plaintiff suffered 'permanent disabilities.' The petition alleges. that the 'plaintiff received painful and permanent injuries, to-wit.' Then follows a specification of the particular injuries received, and these include a fracture of the bones of his leg, severe injuries to plaintiff's internal organs, to his nervous system; that his ears were caused to bleed and his hearing injured; that his right leg was bent and deformed. If these different injuries were permanent, as alleged, they certainly would constitute 'permanent disabilities' in the physical condition of the plaintiff's organs and members.''

V. Appellant also complains that the verdict and judgment are excessive. The evidence shows that at the time that he was injured respondent was about fifty **Excessive Verdict.** years old and was earning about thirty-four dollars per week; that it was twenty-two months after he was injured before he was able to work again; that his right leg was crushed, the skin was torn from the leg from the knee to the ankle, and the covering of the bone was exposed for about four inches; some of his ribs were fractured; portions of the bones of his leg were destroyed, and "sloughed off'' through the skin during the healing process; that he suffered great pain from these and other injuries received at the same time and that his injuries were permanent. We cannot say, in the light of this evidence, that the verdict was excessive.

The judgment should be affirmed.

It is so ordered. All concur.