LOUISE LUKITSCH, Respondent, v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Appellant, No. 42095—246 S. W. (2d) 749.

Court en Banc, March 10, 1952.

*Salkey & Jones* and *Carroll J. Donohue* for appellant.

*Edwin A. Smith* for respondent.

 HOLLINGSWORTH, J.—This case was transferred from Division One, neither of two opinions submitted therein receiving a majority vote. Portions of those opinions are used herein.

The action is for $15,000 damages for personal injuries sustained by plaintiff when she fell to the floor of defendant's eastbound bus at a point on Hebert Street, an east-west street, and east of the intersection of that street with Blair Street in St. Louis. Plaintiff's case was submitted to a jury under the res ipsa loquitur doctrine, plaintiff having alleged defendant's bus was "operated by one of its agents, servants and employees in a negligent manner". Her petition stated the circumstances of an unusual occurrence, in that "said bus suddenly jolted and jerked in a violent and unusual manner", thereby causing plaintiff to lose her balance and to be violently thrown to the bus floor and injured. The jury returned a verdict for defendant. The trial court sustained plaintiff's motion for a new trial on the specified grounds that Instructions 3, 4, 5 and 6, given by the trial court at defendant's instance, were "erroneous, misleading, improper and incorrect instructions of law". Defendant has appealed from the order granting the new trial.

Defendant-appellant here contends that Instructions 3, 4, 5 and 6 are not erroneous but are correct applications of the law to the facts; and that the trial court's order granting a new trial was an erroneous ruling upon matters of law and should be reversed. While trial courts have wide discretion in passing on motions for a new trial where there is error in the record, and may even grant a new trial irrespective of the grounds assigned in a motion for a new trial, yet the power of the trial court to grant a new trial is discretionary only as to questions of fact and matters affecting the determination of issues of fact. There is no discretion in the law of a case, nor can there be an exercise of sound discretion as to the law of a case. Mavrakos v. Mavrakos Candy Co., 359 Mo. 649, 223 S. W. 2d 383; Schipper v. Brashear Truck Co., Mo. Sup., 132 S. W. 2d 993; Loftus v. Metropolitan St. R. Co., 220 Mo. 470, 119 S. W. 942.

Plaintiff introduced evidence tending to show that, at about seven o'clock on the evening of July 12, 1948, she boarded defendant's eastbound Walnut Park bus on Hebert Street at the southeast corner of the intersection of Hebert and Blair Streets. She was intending to go downtown shopping. She showed her pass to the operator of the bus, and, as the bus moved on, plaintiff "walked middleways of the bus—back to the second post—to get a seat", when she heard "a most violent jerk and jar—a terrible squeaking". She was thrown "to the floor all the way up to the front by the driver's seat" and injured. Plaintiff further testified: "Q. Do you know where that squeaking noise came from? A. Probably the brake. Q. Of the bus? A. Yes. Q. Did the bus stop suddenly? A. Yes, sir." And on cross examination: "Q. That is when the stop was made? A. Yes.

I heard the most violent squeaking; I don't remember what happened. Q. You could tell the brakes of the bus were applied? A. Yes, sir. * * * Q. What I am trying to get at: Did that throw you off. balance? A. The squeak jarred me off balance * * *.''

Without objection, plaintiff also proved by her witness, Graves, a policeman who was called to the scene of the accident, that he saw plaintiff lying on the floor of the bus, and that: ''Q. Did you talk to Mrs. Lukitsch as to how she happened to get on the floor of that bus? A. Yes, sir. She stated she had just boarded the bus at Blair and Hebert Street and was walking back in the aisle to get a seat when the bus made a sudden stop'', etc. ''Q. Did you talk to the bus driver? A. Yes, sir. Q. What did he tell you? A. He stated that a car had cut in front of him and he had made a sudden stop to avoid striking this other automobile.''

Also, without objection, plaintiff proved by her son, who had heard of his mother's injury and had gone to the scene, that he there talked to the bus driver: ''What did he tell you? A. He told me that a car pulled in front of him and he had to stop suddenly.''

Defendant introduced evidence tending to show that as the bus moved away from the intersection of Hebert and Blair and had ''straightened out'', it was proceeding along Hebert Street at a rate of speed of not more than fifteen miles an hour. There were cars parked on both sides of the street. The bus was moving east two or three feet from the cars parked on the south side of the street. Hebert Street is of ''regular'' width, and there was room for two vehicles to pass between the parked cars. An eastbound automobile ''going pretty fast'' passed along the left side of the bus. There was no traffic coming from the west. ''He (the driver of the automobile) cut to the right and made a full stop (in front of the bus). * * * When he pulled out in front of me I (the bus operator) quick pulled on the emergency brake and that is when this lady fell *. * *.'' The bus operator further testified that he ''didn't hear any horn either''. He also testified: ''Q. And you say you saw that automobile just to the left of you? ' A.. Yes, sir. Q. It then cut in front of you suddenly? A. Cut to the right suddenly and stopped.'' The bus was brought to a stop when its front end was about two feet from the other vehicle.

Mrs. George Leis, a pedestrian walking eastward on the south side of Hebert Street in the same block in which the bus came to a sudden stop, testified in behalf of defendant: ''* * * what attracted my attention to it was a machine coming down Hebert Street from the west, making such a noise; just honk, honk, honk, just like he wanted the bus—I said to my husband, 'I guess he wants the bus driver to get off the street', just in conversation.'' (What she said to her husband was stricken from the evidence, but it indicates that she did not mean to imply by her testimony that the bus was depriving the

automobile of room for passing.) She further testified: "Well, the car was coming quite fast, * * *. I saw the machine swerve in front of him, * * *. Then the bus driver stopped immediately." And on cross examination: "Q. Was the bus crowding him over? A. No, sir."

George Smith, a passenger on the bus, testified in behalf of defendant: "The first thing that attracted my attention was a man coming down the street blowing his horn and trying to pass the bus. When the bus had just got going a ways, all of a sudden, without a moment's hesitation, he ▋▋ crashes right around in front of the bus and the bus driver has to slam on the brakes * * *."

Instruction 3, hereinafter set out, authorized a verdict for defendant upon hypothesized facts purportedly supporting the theory that the automobile moving eastwardly had passed the bus and then turned into the pathway of the bus so suddenly as to bring about an emergency obliging the bus operator to stop at once in order to avoid a collision. That instruction was as follows:

"The Court instructs the jury that it is the duty of the operator of the motorbus to exercise the highest degree of care for the safety of the passengers thereon and likewise to exercise the highest degree of care for the safety of automobiles and the occupants thereof, that is such care as a very careful and prudent person would exercise under the same or similar circumstances.

"In this connection you are further instructed that if you find and believe from the evidence that at the time and place mentioned in the evidence an automobile suddenly swerved in front of defendant's motorbus and that the operator of said motorbus was confronted with an emergency as a result thereof, if you so find, and that the operator of the motorbus attempted to avoid a collision with said automobile by bringing the motorbus to a stop, and if you find and believe from the evidence that the operator of said motorbus could not anticipate that plaintiff might have been injured by the stopping of said motorbus and if you further find and believe that under the circumstances the operator of said motorbus was exercising the highest degree of care in the operation thereof, then, in such event, plaintiff is not entitled to recover and your verdict must be in favor of defendant."

▋ Plaintiff contends this is a res ipsa loquitur case; that the sudden jolting and jerking of the bus, in and of itself, warranted inferences of negligence which by Instruction 3 were excluded from consideration by the jury. In her original brief she says: "There are many things other than negligence of the operator of defendant's bus which may have caused the bus in the instant case to have suddenly checked its speed. We suggest the following: that the braking mechanism of the bus was defective, and the defendant by and through

its servants and agents other than its operator, negligently maintained such braking system; negligence of defendant, by and through servants and agents other than its operator, in maintenance of the bus in respects other than its braking mechanism, such as a defective wheel, tire, bearing, or axle.'' In her supplemental brief, she adds these suggestions: ''The bus driver may have been driving too far on the north or wrong side of the street. * * * He may not have timely or properly applied the brakes of the bus. He may not have timely swerved his bus to the right after the driver of the oncoming automobile first sounded the horn of his automobile. Certainly, he was not following the law which required him to drive as close to the right-hand side of Hebert Street as practicable.'' In support of these suggestions, plaintiff cites La Vigne v. St. Louis Public Service Co., Mo. Sup., 181 S. W. 2d 541; Durmeier v. St. Louis County Bus Co., Mo. Sup., 203 S. W. 2d 445; Nix v. St. Louis Public Service Co., Mo. App., 228 S. W. 2d 369.

The trouble with plaintiff's theory is that this is not a true res ipsa loquitur case, although it was submitted at the instance of plaintiff as such. Gibler v. Quincy, O. & K. C. R. Co., 148 Mo. App. 475, 128 S. W. 791; Durmeier v. St. Louis County Bus Co., supra. The petition alleged that plaintiff was injured when the bus gave a violent jerk. It did not allege general negligence of *defendant*. It alleged only that the bus was operated by one of defendant's servants in a negligent manner. Furthermore, plaintiff undertook to prove, and did prove, that the sudden jerk of the bus was caused by a sudden application of the brakes. Therefore, both by her petition and by her proof she debarred herself from the right to recover under the res ipsa loquitur doctrine in its true sense. This for the reason that in res ipsa loquitur cases two elements are always essential: (1) the petition must allege general negligence, and (2) the evidence must not disclose specific negligence as the proximate cause. La Vigne v. St. Louis Public Service Co., supra. And if specific negligence is either pleaded or proved, recovery under this doctrine is denied. Venditti v. St. Louis Public Service Co., 360 Mo. 42, 226 S. W. 2d 599.

The La Vigne and Nix cases, supra, are true res ipsa loquitur cases and what is said in those cases is not applicable in this case. Construing the petition and evidence in this case as liberally as we may, we must hold that plaintiff's right of recovery was limited to whether the sudden application of the brakes on the bus and the resulting sudden jerk and plaintiff's consequent injuries constituted negligence in the operation of the bus under the facts and circumstances shown in this case. And it is in that light that Instruction 3 must be considered. 65 C. J. S. p. 1025.

██ It must be conceded that if, as the bus proceeded eastward on Hebert Street, the operator was exercising the highest degree of care in its operation, and that the automobile mentioned in the evi-

dence suddenly swerved in front of it, thereby creating an emergency, and that the operator could not reasonably have anticipated that the automobile would swerve in front of the bus and had done nothing to create the emergency, and that the operator, in the exercise of the highest degree of care, was required to bring the bus to a sudden stop to avert a collision, then he was not negligent.

Plaintiff's Instructions 1 and 2 had admonished the jury that defendant was a common carrier and had the *continuous duty* to exercise the highest degree of care in the operation of the bus, and defined the term "highest degree of care". Thus, by these instructions, the duty of the operator was clearly put to the jury.

With the effect of Plaintiff's Instructions 1 and 2 in mind, it is clear that Instruction 3 precisely directed the jury as to each and every factual element necessary for it to find in order to absolve the operator from negligence, except that it did not require a finding that the operator had done nothing to create the emergency and could not have anticipated it would arise. In this connection, we think it can further be said that if the bus operator did nothing to create the emergency, then he could not anticipate it would occur, in the absence of some fact or circumstance that would serve as a warning that the automobile driver might swerve suddenly in front of the bus as he passed it.

In Durmeier v. St. Louis County Bus Co., Mo. Sup., 203 S. W. 2d 445, a case very similar to this one, in which a concisely drawn instruction hypothesizing the facts upon which defendant sought a verdict was given, there was a specific requirement of a finding that the bus operator was not guilty of any negligence and that the act of the driver of the passing car in suddenly swerving in front of the bus was the sole cause of the incident. It might well be here said that had Instruction 3 in this case been as concisely and clearly drawn as was the instruction under scrutiny in the Durmeier case, then the vexing problem here presented would not have arisen. But there is no suggestion in that case that the instruction would have been held bad had it not contained the express requirement above stated. A careful analysis of the case, a portion of which is hereinafter quoted, does not convince us it would.

If the facts in the case at bar, in and of themselves, exclude any reasonable inference of negligence on the part of the bus operator in bringing about the emergency and that he could not reasonably anticipate the car would suddenly swerve immediately in front of the bus, then there could be no prejudicial error in Instruction 3 in its omission of those elements.

There is no fact or circumstance in the record from which a reasonable inference can be drawn that, as contended by plaintiff, the bus driver "may have been driving too far on the north or wrong side of the road", or that "certainly, he was not following the law which

required him to drive as close to the right-hand ▮▮▮ side of Hebert Street as practicable.'' Quite to the contrary, the only evidence on that phase of the case was that of defendant, which was that the bus was being operated with its right side within two or three feet of the cars parked on the south side of Hebert Street. True, the jury was not required to believe defendant's evidence, but neither may the jury be permitted to conjure up imaginary specific instances of negligence in the absence of supporting evidence. Gibler v. Quincy, O. & K. C. R. Co., 148 Mo. App. 475, 128 S. W. 791; 65 C. J. S. p. 999. When the jury believed, as its verdict showed it did, that an emergency arose by reason of the car, which was not under the control of defendant, swerving in front of the bus, it then seems too clear for argument that the question of determining whether the emergency was created in whole or in part by the bus operator must be determined from facts and circumstances *in evidence,* not by mere surmise.

Plaintiff's further suggestion that the bus operator may not have ''timely or properly'' applied the brakes or may not have ''timely swerved the bus to the right'' is fully answered by the express direction of Instruction 3. It required a finding of sudden swerving of the automobile in front of the bus confronting the operator of the bus with an *emergency,* his effort to avoid collision by bringing the bus to a stop, and that in acting as he did (suddenly stopping the bus) he was in the exercise of the highest degree of care. The word ''emergency'' means ''an unforeseen combination of circumstances which calls for immediate action''. Merriam-Webster's New International Dictionary. Therefore, the jury was required to find that the swerving of the car in front of the bus created an unforeseen combination of circumstances calling for immediate action, and that in suddenly stopping the bus the operator was exercising the highest dgree of care. Defendant's evidence warranted the jury in so finding.

Neither do we believe that the ''honking'' of the horn by the driver of the car warrants an inference that had the bus operator heard and heeded it he reasonably could have anticipated that the car might be suddenly swerved out of its path of travel and into the path of travel of the bus immediately after passing it. This incident occurred in the middle of the block, where the sounding of a horn by a driver in the rear ordinarily means at most that he intends to pass on the left of the forward vehicle. Therefore, unless there was some other fact or circumstance present which would cause the bus operator, by the use of his senses thus alerted by a repeated ''honking'' of the horn, to anticipate that the car would be suddenly swerved in front of the bus, then the sounding of the horn was of no significance. Defendant's evidence expressly excluded the only circumstances that might have existed: (1) that the bus was so over-crowding the car as possibly to cause it to immediately swerve to the right after passing, and (2) that there was traffic approaching from the east which would

require such swerving to avoid collision therewith. Again, it is true the jury was not required to believe this evidence, but certainly, for the reasons hereinabove stated, it would not, in the absence of supporting evidence, be warranted in conjecturing that either of these specific circumstances did exist.

In the Durmeier case, 203 S. W. 2d 445, 448, we said: "It must be kept in mind that the bus and the car were traveling in the same direction. A duty rested upon the driver of the car not to pass unless he had sufficient clearance ahead to do so. However, there was no evidence that there was any traffic in the other lane coming toward the bus and the car. Again, plaintiff says the instruction directed the jury that there was no duty on defendant's bus driver to take any action when the automobile which the bus struck was approaching and was about to drive in front of the bus. [Citing cases.] In those cases the colliding vehicles and pedestrians were approaching intersections and were about to cross each other's paths, while in the case before us the vehicles were going in the same direction, one passing the other. Therefore, there was no signal of danger until the passing car turned toward the other and that too soon. The cases cited by plaintiff have no application. Instruction number four is worded so as to conform to the facts in evidence. Note what it says: '* * * if you further find and believe that the driver of the automobile mentioned in the evidence suddenly and without warning swerved or turned said automobile into and against or immediately in front of said motorbus * * *.'

"Certainly there was no indication of danger until the car turned or swerved. The instruction, under the facts in this case, is not subject to the criticisms made by plaintiff."

Instruction 3 is not approved as the perfect instruction to be followed or used in other cases. But under the circumstances of this case it hypothesized sufficient facts to wholly absolve defendant from fault and (as to this case) did not limit the field of permissible inferences which the jury could draw under the pleadings and evidence. We rule the trial court did not err in giving Instruction 3.

Instruction 4 is as follows:

"The Court instructs the jury that the burden of proof is on the plaintiff to show by the greater weight of the credible evidence that she was injured through the negligence of the defendant.

"You should not find that the defendant was negligent from the mere fact of the occurrence shown by the plaintiff's evidence, if you find and believe from all the evidence in the case that the defendant was not negligent, and if you do find and believe from all the evidence in the case that the defendant was not negligent, then your verdict should be for the defendant."

We believe that Instruction 4 should not be considered misleading and confusing or erroneous when read in connection with plaintiff's principal Instruction 2, which follows generally the form as suggested in Harke v. Haase, 335 Mo. 1104, 75 S. W. 2d 1001. Instruction 4 is similar to the defendant's modified Instruction C suggested in the Harke case (335 Mo. at page 1111, 75 S. W. 2d at page 1004). Instruction 4 is dissimilar to Instruction 5 considered in the case of West v. St. Louis Public Service Co., 361 Mo. 740, 236 S. W. 2d 308, which Instruction 5 (although there held not to be misleading or confusing when read and considered in conjunction with the other instructions given in the West case) is not to be recommended, in its form or in its use, in any case which is based, in whole or in part, upon circumstantial evidence. 'West v. St. Louis Public Service Co., supra.

The first paragraph of Instruction 5 is identical with Instruction 6 given in the West case, the giving of which Instruction 6 was held by this court to have been in the proper exercise of the trial court's discretion. West v. St. Louis Public Service Co., supra. The second and third paragraphs of Instruction 5 are as follows:

"If the plaintiff is not entitled to recover, then in your deliberations you should not consider the amount of damages.

"Neither passion, prejudice nor sympathy should influence you in any manner in deciding this case, for it is your sworn duty to try this case and to decide it impartially according to the evidence and the instructions of the Court."

The second paragraph logically follows the first, and in our view is not unduly or prejudicially repetitious. The giving of cautionary instructions in the language of the third paragraph has been held to be properly within the trial court's discretion. And compare Instruction 5 as a whole with Instruction 8 examined by this court in Mendenhall v. Neyer, 347 Mo. 881, 149 S. W. 2d 366. See also Oliver v. Morgan, Mo. Sup., 73 S. W. 2d 993, Derrington v. Southern R. Co., 328 Mo. 283, 40 S. W. 2d 1069; Aronovitz v. Arky, Mo. Sup., 219 S. W. 620; Waeckerley v. Colonial Baking Co., 228 Mo. App. 1185, 67 S. W. 2d 779. It was not error to give Instruction 5.

Instruction 6, on the credibility of the witnesses, is as follows:

"The court instructs the jury that you are the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. In determining such credibility and weight, you may take into consideration the witness, his or her manner on the stand, his or her interest, if any, in the result of the trial, his or her relation to or feeling towards the parties to the suit, the probability or improbability of his or her statements, as well as all the other facts and circumstances given in evidence."

We see no error or abuse of the trial court's discretion in giving this Instruction 6 in the instant case and think that it is not misleading or prejudicial. Its giving affords no ground for granting a new

trial. Respondent in her brief does not attempt to point out any impropriety in giving the instruction. It is clear and short. It does omit the words "the character of" which usually follow the word "consideration" as used in the second sentence of the instruction. See Malone v. Franke, Mo. Sup., 274 S. W. 369. This omission surely does not make the instruction erroneous, in our opinion. The instruction does not include a clause relating to willful false swearing, the propriety of the use of which clause (and its language) has been questioned in some cases. See Hamre v. Conger, 357 Mo. 497, 209 S. W. 2d 242; State v. Willard, 346 Mo. 773, 142 S. W. 2d 1046; Woehler v. City of St. Louis, 342 Mo. 237, 114 S. W. 2d 985, and cases therein cited.

The order granting the new trial is reversed and the cause is remanded to the circuit court with directions to reinstate the judgment entered in favor of defendant in accordance with the verdict of the jury.

*Ellison, C. J.,* and *Tipton, J.,* concur; *Conkling, J.,* concurs in separate opinion; *Dalton, J.,* dissents in separate opinion; *Hyde, J.,* dissents in separate opinion; and *Leedy, J.,* dissents and concurs in separate dissenting opinions of *Hyde* and *Dalton, JJ.*

█ CONKLING, J. (concurring).—I concur in the principal opinion prepared by Judge Hollingsworth. Set out below are additional reasons for my concurrence in the reversal and remand with directions to reinstate the judgment entered on the jury's verdict.

I cannot read the principal opinion to rule that the petition alleges specific negligence, or that it may be so construed. The principal opinion states this is "not a *true* res ipsa loquitur case" and that the petition "did not allege general negligence of *defendant.*" The petition alleged general negligence of the operator of the bus, but not the general negligence of defendant. The instant *petition,* alone, could not preclude plaintiff from recovery under the res ipsa doctrine on the ground of negligent operation.

But I think that this record shows (see testimony set out in the principal opinion) that plaintiff herself proved the specific cause of her fall, the sudden application of the brakes by the bus operator. Plaintiff did not rest her case in this respect upon any mere personal conclusion or opinion that the jolt of the bus was caused by the sudden application of the brakes. Plaintiff proved by Officer Graves and by her son that the bus operator said the jolt was so caused. That testimony of those witnesses (called by plaintiff) was just as effective to establish that fact as if she had proved it by witnesses who had observed the sudden application of the brakes. Plaintiff herself testified that the bus stopped suddenly, that the brakes were "squeaking", that she could tell the brakes of the bus were applied, and that

that threw her off balance. Defendant's testimony also proved the brakes were suddenly applied. But considering the testimony adduced by plaintiff *alone,* in my opinion that testimony nailed down the fact that the jerk of the bus was caused by the sudden application of the brakes. Therefore, plaintiff knew, and proved she knew, the cause of her fall.

I think the plaintiff's evidence in this case, viewed most favorably to plaintiff, shows the precise and specific act of the bus operator as the sole cause of plaintiff's fall. That act, so shown by her evidence, was the sudden application of the brakes resulting in a sudden stop. If it be true that plaintiff's testimony does show that precise and specific act of the bus operator to be ▮▮▮ the cause of her fall, plaintiff proved herself out of any right to a res ipsa loquitur submission even under the instant petition. Belding v. St. Louis Public Service Co., 358 Mo. 491, 215 S. W. (2d) 506, and cases cited, Powell v. St. Joseph Ry. Lt. Ht. & Pr. Co., 336 Mo. 1016, 81 S. W. (2d) 957, Conduitt v. Trenton Gas & Elec. Co., 326 Mo. 133, 31 S. W. (2d) 21. But, if plaintiff's evidence but *tends* to show the specific cause of her fall and, upon the evidence "the true cause is still left in doubt or is not clearly shown" plaintiff had a right to submit her case on the res ipsa loquitur doctrine. Cases last above cited.

It has been said that upon this question the instant case is ruled by Belding v. St. Louis Public Service Company, supra. I cannot agree that it is. I think the testimony of the plaintiff and her witness, Mrs. Menser, in the Belding case, amounted to no more than a suggestion in plaintiff's testimony that plaintiff's fall in that case was due to an application of the brakes, did no more than *tend* to show the cause of her fall, but in fact left the true cause of her fall in doubt. I think that the Belding case, on its facts, was rightly ruled. But I think the facts of the instant case are at least of equal probative value with the facts of Hoeller v. St. Louis Public Service Company, (Mo. App.) 199 S. W. (2d) 7, 11, to establish the true and precise cause of the fall. See also, 215 S. W. (2d) l. c. 511. In the Hoeller case, plaintiff proved by another witness, her daughter, such additional facts as that the court there correctly ruled that specific negligence was proved and that plaintiff was not entitled to submit her case at all upon the res ipsa theory. I think the principal opinion is not only not in conflict with the Belding case, but that it is in entire accord with the Belding case. I think also that plaintiff here proved herself out of the right to a submission of her case on the res ipsa loquitur theory.

▮▮▮ Inasmuch as plaintiff was not, in my opinion, entitled to a res ipsa submission of her case, and, inasmuch as instruction 3, defendant's theory instruction, was correct as a matter of law, submitted defendant's theory and required the jury to find the operator was exercising the highest degree of care, I think plaintiff cannot be

heard to now complain that instruction 3 erroneously limited "the scope of the legal presumption or inference in plaintiff's favor created by the establishment of res ipsa facts". I believe that under these circumstances it is not required that instruction 3 "make it clear that an emergency does not excuse a party if such emergency resulted from that party's own negligence." Plaintiff's res ipsa submission made in her instruction 2 was a submission to which she was not, in my opinion, entitled under her evidence. And it is immaterial to the disposition of this case that instruction 3 did not require the jury to find that the *sole* cause of the sudden stop was an emergency created by another car cutting in front of and stopping in front of the bus, which requirement was in the Durmeier case instruction.

In Mintz v. International Railway Co., 227 N. Y. 197, 124 N. E. 893, an appeal from a verdict for plaintiff, the plaintiff had boarded a street car which started up as she was walking to her seat; a sudden stopping of the car threw her to the floor and injured her; the car was stopped by the motorman by a sudden application of the brakes because a small boy ran upon the track immediately in front of the street car. In ruling that case, the New York Court of Appeals, Judge Cardozo concurring, said: "The facts do not support the verdict. Negligence on the part of the defendant cannot be predicated upon them. At the instant the boy first came into the sight of the motorman the danger of killing him was imminent. The defendant was bound to use every available agency or means, which did not within reasonable probability subject the passengers upon the car to serious bodily injury, to avoid killing or mangling him. As between the act of stopping the car suddenly before it ran upon him and thereby shaking, displacing, or jerking the passengers and the act of stopping it gradually and carefully and therein permitting it to run upon him, the defendant was bound by the commands of ordinary and reasonable prudence and care, as well as by the dictates of the right regard for human life, to adopt the former. The stopping of the car and the means used to stop it were not ██ more urgent or vigorous than the peril of the boy, when first visible to the motorman, warranted. The likelihood of injury to the passengers in their use was slight and to be disregarded in contrast with that of killing the boy by neglecting them. The sudden stopping of the car under the circumstances did not evince a disregard of the safety of the plaintiff or the other passengers. It was not only justified but praiseworthy."

If it were necessary to do so, I think that rule of the Mintz case could well be applied in this case.

For these additional reasons I concur in the reversal and remand ordered in the principal opinion, and in the directions to reinstate the judgment entered in favor of defendant in accordance with the verdict of the jury in this case.

■ HYDE, J. (dissenting).—I respectfully dissent from the principal opinion herein. I cannot agree that plaintiff's proof converted this case to a specific negligence case. It may be conceded that the petition alleged negligence only in the operation of the bus but it did so in general terms and charged no specific act of negligent operation. ("* * * operated by one of its agents, servants and employees in a negligent manner, in that after she had boarded said bus and paid her fare and while she was walking in the center aisle thereof toward the back thereof with her face toward the back of said bus and with her back toward the front of said bus and where the operator or chauffeur thereof was sitting, said bus suddenly jolted and jerked in a violent and unusual manner.") I do not think this petition can be construed to allege specific negligence. (See Boulos v. Kansas City Public Service Co., 359 Mo. 763, 223 S. W. (2d) 446; Belding v. St. Louis Public Service Co., 358 Mo. 491, 215 S. W. (2d) 506; Semler v. Kansas City Public Service Co., 355 Mo. 388, 196 S. W. (2d) 197; Price v. Metropolitan Street Ry. Co., 220. Mo. 435, 119 S. W. 932.) In Bergfeld v. Kansas City Rys. Co., supra, 285 Mo. 654, l. c. 665, 227 S. W. 106, l. c. 109, it was said, "In order to allege specific negligence, as said in the Price case, there must not only be an averment as to the particular servants whose negligence is complained of, but it must also be pointed out wherein they, or either of them have been negligent." The petition herein did not do that.

■ I understand the theory of the principal opinion herein to be that plaintiff's proof showed the specific negligence to be in the sudden application of the brakes. However, the opinion also holds that defendant's Instruction No. 3 was not prejudicial because plaintiff did not show this sudden application of the brakes to be negligence in the emergency situation that arose while plaintiff was walking to the rear of the bus. It is said there was no proof of negligence because plaintiff failed to prove that the bus was not being driven in a proper manner as near the right side of the street as practicable. In other words, plaintiff's proof did not show that defendant had been guilty of any negligence that contributed to the emergency which required the sudden application of the brakes. If the sudden application of the brakes by defendant's operator was required by the emergency, then the only negligence of which the operator ■ could have been guilty was some conduct which contributed to bring about the emergency.

In this situation it seems to me it cannot be held that the case was converted from res ipsa to specific negligence because plaintiff's proof did not make a jury case on specific negligence. I think plaintiff's proof must be sufficient to make a jury case on specific negligence before the case can be changed from res ipsa to specific negligence. The rule is that "even though a plaintiff's evidence may tend to show the specific cause of the accident he will nevertheless

not lose the benefit of the doctrine, nor be deprived of the right to rely upon it in the submission of his case, if, after his evidence is in, 'the true cause is still left in doubt or is not clearly shown' ''; and that he only loses it when he ''goes so far in his own evidence as to point out, and reveal his knowledge of, the specific act of negligence which was responsible for his injury.'' (Belding v. St. Louis Public Service Co., supra, 215 S. W. (2d), l. c. 510, and cases there cited.) The reason for the rule is that ''a plaintiff can neither definitely state nor show that his injury was caused in a certain way and then allow the jury to speculate on whether it was caused in some other way.'' (Sanders v. City of Carthage, 330 Mo. 844, 51 S. W. (2d) 529.) Surely a plaintiff has not clearly and definitely shown the specific act of negligence that caused his injury if his evidence is not sufficient to make a jury case on the issue. On substantially the same kind of evidence as here, we said in the Belding case (215 S. W. (2d), l. c. 510): ''The reference in plaintiff's evidence to the sudden application of the brakes may not be said to have so clearly pointed out and identified any specific act of negligence on the part of defendant or its driver as to have constituted a waiver of plaintiff's right to rely upon the doctrine of res ipsa loquitur.''

■ Considering the case one in which plaintiff was entitled to the benefit of the res ipsa rule, I think the trial court's order granting a new trial on the ground that Instruction No. 3 was ''misleading'' should be affirmed. The principal opinion concedes that this is not ''the perfect instruction to be followed or used in other cases.'' That indicates some basis for the trial court's action. However, if the trial court had overruled the motion for new trial, I might agree that Instruction No. 3 was not prejudicially erroneous when considered with the entire charge to the jury; but the situation is vastly different when the trial court exercises its judicial discretion to grant a new trial on the ground stated. '' 'When a motion for new trial is sustained an appellate court will be more liberal in upholding such action than it might be in reversing a judgment on the same ground on appeal. Thompson v. St. Joseph Ry. L. H. & P. Co., 345 Mo. 31, 131 S. W. (2d) 574; see also Castorina v. Herrmann, 340 Mo. 1026, 104 S. W. (2d) 297; Taylor v. Farmers Bank of Chariton County, 349 Mo. 407, 161 S. W. (2d) 243. This is because the trial judge, having participated in the trial, had the best opportunity to determine the effect of any error; and granting a new trial is the exercise of judicial discretion which will be upheld unless abused or clearly erroneous.' Teague v. Plaza Express Co., 356 Mo. 1186, 205 S. W. (2d) 563, 566.'' (Tennison v. St. Louis-San Francisco Ry. Co., Mo. Sup., 228 S. W. (2d) 718, l. c. 721.) I think there are good reasons for the trial court's conclusion that Instruction No. 3 was misleading and for that reason its action should be sustained.

This instruction does not make it clear that an emergency does not excuse a party if such emergency resulted from that party's own negligence. (See Iman v. Walter Freund Bread Co., 332 Mo. 461, 58 S. W. (2d) 477, quoting Hall v. St. Louis-S. F. Ry. Co., Mo. Sup., 240 S. W. 175, 177; Lewis v. Zagata, 350 Mo. 446, 166 S. W. (2d) 541; 65 C. J. S. 412, Sec. 17e.) I do not agree that any of the requirements of the instruction upheld in Durmeier v. St. Louis County Bus Co., Mo. Sup., 203 S. W. (2d) 445, l. c. 447, should be omitted. Certainly Instruction No. 3 herein did not make it clear, as did the instruction in the Durmeier case that, to require a verdict for defendant, it was necessary to find there was no negligence of its bus driver that directly contributed to create the emergency. Furthermore, the requirement in Instruction No. 3 "that the operator of said motorbus could not anticipate that plaintiff might have been injured by the stopping of said motorbus", injected an issue foreign to the essentials of an emergency situation. (See A. L. I. Restatement of Torts, Sec. 296, comment b.) If there was a true emergency situation, there could not have been any time to anticipate anything after the emergency arose. A better requirement would have been "that the operator of said motorbus could not have anticipated that the automobile would suddenly swerve in front of the motorbus." That would present a material issue on the creation of the emergency.

In Filkins v. Snavely, 359 Mo. 356, 221 S. W. (2d) 736, we approved an instruction on the law of emergency which very clearly hypothesized that the defendant was driving his vehicle on the proper side of the road, "without negligence on his part," and then hypothesized the cause of the emergency and defendant's action in a way which his evidence tended to show he acted. We held the trial court properly granted a new trial for failure to give such an instruction on the law of emergency. That is the kind of an instruction which I think should be given when an instruction is required on the law of emergency. While Instruction No. 3 did hypothesize that the bus operator was exercising the highest degree of care in the operation of the bus "under the circumstances," the jury could have reasonably understood that the instruction in the use of the phrase "under the circumstances" referred to the hypothesized circumstances of the emergency only. Because of the indefiniteness and lack of clarity of this instruction, the trial judge would have been warranted in believing that the jury returned a verdict for defendant because the jury found the bus driver exercised the highest degree of care upon being confronted by the emergency, although the jury might have believed the operator did negligently contribute to bring about the emergency by failure to be attentive and to hear or observe other vehicles on the street. Therefore, I do not think we can say that there was a clear abuse of judicial discretion by the trial court in

granting a new trial on the ground that Instruction No. 3 was misleading.

I would affirm the order granting a new trial. *Leedy, J.,* concurs.

DALTON, J. (dissenting).—I respectfully dissent from the conclusion reached in the principal opinion.

I think that Instruction 3 is erroneous. It directs a verdict for defendant without requiring a finding that defendant's operator in the exercise of the highest degree of care could not have anticipated the emergency and did not contribute to create it. Accordingly, I believe the instruction unduly limited plaintiff's right of recovery. The form of the instruction further permits an inference that the operator discharged his full duty if he exercised the highest degree of care after the emergency arose. Whether or not the instruction was prejudicially erroneous under the pleadings, evidence and other instructions in this case was primarily a fact issue for the determination of the trial court. The trial court found that the instruction was misleading, as well as being erroneous, and granted a new trial. I think we should defer to the trial court's action and affirm the order granting a new trial.