W. H. Page, Respondent, v. The City of Fayette, Appellant.—
116 S. W. (2d) 578.

Kansas City Court of Appeals.  May 2, 1938.

*Luman Spry* and *Lionel Davis* for respondent.

*Bagby & Pierce* for appellant.

CAMPBELL, C.—Plaintiff's petition alleged that on July 17, 1935, the defendant, a city of the fourth class, was in possession and control of a building in the city of Fayette, known as the Cooperative Elevator Building; and that on that day defendant, ''acting by and through its Mayor, ordered and directed the plaintiff as its servant and employee,'' and other of its employees, to clean the said building ''inside and outside under the direction of one Talbert who was in charge of the said work of cleaning up said building and preparing the same for the operation of a canning plant;'' that at that time Johnson, one of defendant's said employees, was engaged in washing the inside of the roof of the building with a hose, and while so engaged requested one of his co-workers to bring to him a wrecking bar; that thereupon plaintiff obtained the bar, climbed a ladder fourteen feet in length, extending from the floor to the place where Johnson was working, and when plaintiff was near the top of the ladder the bottom of the ladder slipped and plaintiff was thereby caused to fall a distance of about fourteen feet, in consequence of which he sustained severe injuries. The petition further charged that plaintiff was in the exercise of due care; that the ladder was not secured either at the top or bottom and that it was unattended.

The grounds of negligence charged in the petition were that the ladder was unsecured, as above stated, and that the defendant allowed the floor on which the ladder was placed to be covered with water which caused the floor to be slick.

The answer admitted defendant was a city of the fourth class; that at the time in question it was in possession of and had supervision and control of the elevator building; that the floor of the building was covered with water and was slick and wet, and denied the other allegations of the petition. The answer further pleaded that

plaintiff was defendant's street commissioner; that an ordinance of the city created that office and prescribed the duties of the commissioner; that the ordinance does not provide that it was the duty of a street commissioner to wash and clean "defendant's building;" that plaintiff was a volunteer or licensee, not the servant of the defendant, and that its mayor had no authority to direct plaintiff to do the work in which he was engaged at the time of injury. The answer further alleged in substance that plaintiff was guilty of contributory negligence.

The trial was to a jury. The verdict was for the plaintiff in the sum of $1200. From the judgment rendered on the verdict the defendant has appealed.

The plaintiff testified in effect that he was defendant's street commissioner; that his duties were to take care of the streets, build culverts, care for streets, cut weeds, grade streets and keep them in condition; that it was customary for him to receive instructions from D. C. Rogers, defendant's mayor; that Rogers told him to go with Johnson, an employee of defendant, and assist in cleaning the elevator building; that in obedience to the direction he went to the building and during the forenoon of the day of accident worked in removing machinery, scrap iron and rubbish from the building; that about 2 o'clock in the afternoon he went into that part of the building where Johnson had been engaged throughout the day in washing the inside of the roof of the building, using a hose for that purpose; that about five minutes later Johnson requested a wrecking bar be brought to him. In relating the occurrence, plaintiff said: "Well, I went in there and when I got to where this government man was he was standing there pointing to something in the roof and giving Johnson instructions to get it off and Johnson called down and said, 'I will have to have a wrecking bar,' and I carried the wrecking bar up the ladder so Johnson could remove this and when I got up to the top of the ladder I aimed to step over with my left foot and I felt the ladder give and that was the last I realized, when I struck the ground."

Plaintiff further testified that both in the forenoon and afternoon he saw Johnson washing the inside part of the roof by forcing water through a rubber hose; that the water, when it struck the roof, fell to the concrete floor of the building.

"Q. And you went up a ladder leaning on the floor—setting on the floor—and leaning against one of those Joists? A. Yes, sir.

"Q. When you went up did you see how it was at the bottom? A. No, sir.

"Q. Did you when you went up to the top see how it was fastened at the top? A. No, sir.

"Q. Did you observe the condition of the floor? A. No, sir.

"Q. You did not ask whether it was wet or dry? A. No, sir.

"Q. Did you ask for anybody to hold the ladder for you? A. No, sir. I had seen Mr. Johnson go up and I presumed it was safe.

"Q. Did you ask anyone to tie it at the top? A. No, sir.

"Q. You went up the ladder without looking to see how it was setting? A. Yes, sir."

Plaintiff's witness, Johnson, testified Talbert brought the bar to the foot of the ladder, gave it to plaintiff who then ascended the ladder; that the foot of the ladder was in water which had fallen from the ceiling which caused the floor to be wet and slick; and that he would "judge" the rungs of the ladder were wet; "we had been climbing up on it."

The substance of the evidence for the defendant was that no ordinance provided for the cleaning of the building nor for the doing of any of the work required to equip the building for a canning factory.

The defendant, over the objections of plaintiff, introduced its ordinance No. 30 which prescribed the duties of the street commissioner. Later in the trial the court withdrew the ordinance from the consideration of the jury.

The defendant assigns error to the action of the court in refusing its request to have verdict directed in its favor.

In support of this contention defendant says (1) there was no evidence showing its mayor had authority to order plaintiff to do any work save the work prescribed in ordinance No. 30, nor authority to employ any person to perform any work upon the elevator building; (2) no evidence Talbert was acting for the defendant; (3) no evidence the ladder was furnished by the defendant; (4) plaintiff assumed the risk; (5) and plaintiff was guilty of contributory negligence.

In support of the contention that the mayor lacked authority to direct plaintiff to assist in cleaning the elevator building the defendant cites, among others, the case of Thrush v. City of Cameron, 21 Mo. App. 394. In that case the court held the act of the street commissioner in building a fence across a street, though sanctioned by the mayor, was not the act of the city. The court based its holding on the provisions of Article 5, Chapter 89, Revised Statutes 1879. Since the decision in the Thrush case, Section 4958, Article 5, *supra*, has been amended and is now Section 6953, Revised Statutes 1929. The amendment enlarged the power of the mayor of defendant by vesting in him general supervision "over all the officers . . . of the city."

The answer alleged plaintiff was an officer of the defendant city (Section 6951, Revised Statutes 1929) and, hence Mayor Rogers had general supervision over plaintiff. The answer alleged the defendant had possession, control and supervision of the elevator building; that the ordinance creating the office of street commissioner does not

provide it was the duty of the street commissioner to work and clean the walls of "defendant's building." Were we to say defendant's mayor was without authority to direct plaintiff to assist in caring for defendant's property, we would in effect ascribe no meaning to the above quoted provision of Section 6953, and this we decline to do.

Whether Talbert was or was not acting for the city is not material for the reason that plaintiff, according to his testimony, ascended the ladder at the request of Johnson.

The contention that there was no evidence the defendant furnished the ladder, cannot be sustained. The ladder was in defendant's building, under its control, and was one of the appliances used in doing the work; it was the passageway furnished by defendant for its employees.

The question of assumption of risk will be discussed in connection with our discussion of defendant's refused instruction B.

Of the plaintiff's contributory negligence: The defendant contends a ladder is a simple tool and cites cases supporting that contention. In the instant case the injury was not caused by any defect in the ladder; it was the failure to secure the ladder either at its top or base which caused it to slip on the wet floor, or at least the jury could find that was the cause.

It must not be overlooked that plaintiff said he thought the ladder was safe because he had seen another workman use the ladder and therefore assumed it was safe.

Considering the facts, we have arrived at the conclusion we cannot say that plaintiff was guilty of contributory negligence, as a matter of law, for the reason reasonable minds might differ concerning that question. [Gentili v. Dimaria, 89 S. W. (2d) 93; Olds v. St. Louis Nat. Baseball Club, 104 S. W. (2d) 746; Scism v. Alexander, 93 S. W. (2d) 36.]

The duties of the street commissioner as prescribed in ordinance No. 30 were substantially the same as plaintiff said they were. Plaintiff should not have been permitted to state what his duties were because his duties were prescribed by ordinance, but as he stated his duty correctly the evidence did not harm the defendant.

It was proper for the court to strike ordinance No. 30 for the reason the action was not predicated on the theory that plaintiff, at the time of accident, was performing a duty enjoined on him by ordinance, but upon the theory that he was doing work under the direction of the mayor who had general supervision over him.

Plaintiff was permitted, over defendant's objection, to testify that he received "most" of his instructions from the mayor. Whether such instructions related to the performance of the ordinary duties of plaintiff as street commissioner or to other matters, was not shown. The error, if any, was harmless.

42

Complaint is made of the action of the court in refusing defendant's requested instruction "A".

The instruction said if the jury found the office of street commissioner was created by ordinance and the ordinance does not provide that it was the duty of the street commissioner to assist in cleaning defendant's building, then plaintiff could not recover.

We have held the court properly withdrew the ordinance from the consideration of the jury, from which it follows the instruction was properly refused.

Defendant argues the court committed error in refusing its requested instruction B.

The instruction would have told the jury that if it found the floor of the building was wet and slick, the ladder unsecured and unattended, that the ladder slipped from under plaintiff and caused him to fall and be injured, "yet you are further instructed that the defendant is not bound or under any obligation to indemnify the plaintiff for any injury suffered by him in consequence of an ordinary risk or danger incident to or inherent in the work at which he was employed, if he was so employed. And if you find that the prosecution of the work of washing and cleaning the walls and ceiling of defendant's building caused the floor of said building to become wet and slick and to remain wet and slick during the course of the work, and if you find that plaintiff ascended a ladder placed or standing upon said floor and while in a slick and wet condition and that the danger of falling therefrom was an ordinary risk incident to and inherent in the plaintiff's employment, and that said danger was open and obvious to the plaintiff, then your verdict must be for the defendant."

The plaintiff did not assume the risks arising out of the defendant's negligence. [Torvian v. Parkview Amusement Co. et al., 56 S. W. (2d) 134.]

The instruction was so written that it might have caused the jury to believe the risk of using the ladder while it was standing on a slick floor was an ordinary risk, and hence the defendant was not negligent in furnishing an unsafe passageway for the use of its workmen.

Moreover, "The defense of assumption or risk is one which must rest on contract. . . . When negligence, primary or contributory, is present, the doctrine of assumption of risk has no place." [August Viermann Bricklaying Co. v. St. Louis Contracting Co., 73 S. W. (2d) 734, 741.]

The court well ruled the requested instruction.

If it is correct to say the defense of assumption of risk is one which must be based on contract, then the claim that plaintiff assumed the risk admits the existence of a contract between plaintiff and defendant.

The defendant claims plaintiff's instruction No. 2 was erroneous for the following reasons: (1) Does not require the jury to find the defendant's mayor directed plaintiff to work upon the building nor require a finding that the mayor was the authorized agent of defendant; (2) assumes Talbert was an agent of defendant in charge of the work on the building; (3) does not require a finding that defendant had actual or constructive knowledge of the insecurity of the ladder or the slick condition of the floor.

The instruction does not allow plaintiff to have the verdict unless the jury found "from the evidence" the defendant's mayor "directed" plaintiff to go to the building and work under the supervision of Talbert. Whether Talbert was or was not an agent of defendant is, under the facts of this case, of no consequence. The unsafe condition of the ladder and the floor was caused by the acts of defendant's employees. In such circumstances the question of notice, actual or constructive, was not in the case.

The foregoing determines all the questions presented on this appeal. The judgment is affirmed. *Sperry, C.,* concurs.

PER CURIAM:—The foreging opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.