257 S.W.2d 655 (1953)
RHINELANDER
v.
ST. LOUIS-SAN FRANCISCO RY. CO.
No. 43036.
Supreme Court of Missouri, Division No. 2.
April 13, 1953.
Motion for Rehearing or to Transfer to Denied May 11, 1953.
*656 Hullverson & Richardson, St. Louis, for appellant.
E. G. Nahler, James L. Homire, C. H. Skinker, Jr., and W. W. Dalton, St. Louis for respondent.
Motion for Rehearing or to Transfer to Court en Banc Denied May 11, 1953.
*657 TIPTON, Judge.
This suit was brought in the circuit court of the city of St. Louis, Missouri, by appellant, as administratrix of the estate of Harry William Rhinelander, under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq., against the respondent railroad, a common carrier engaged in interstate commerce, for damages for the death of the intestate while on duty for respondent as a locomotive fireman. The trial resulted in a verdict and judgment for respondent railroad.
In the appellant's brief we find the undisputed facts stated as follows: "Briefly: Rhinelander was the fireman on a southbound freight train which struck a westbound truck at a farm-to-market road crossing in Oklahoma. The truck carried a large drum of gasoline. After the collision flames shot back into the locomotive cab, and the truck was pushed 800 to 1,000 feet along the track. The truck driver and Rhinelander received injuries and burns which caused their deaths. The only eyewitnesses were the engineer, who did not see the truck coming in from the fireman's side, and the head brakeman, who was stationed in a cupola on the locomotive tank on the fireman's side. Other witnesses testified either as experts or as ear-witnesses to the only issue plaintiff submitted to the jury: did the engineer sound a warning of the approach of the train to the crossing?" Other essential facts will be stated in the course of this opinion.
The only points raised upon this appeal are the propriety of the action of the trial court in giving to the jury respondent's requested instructions 4, 5 and 6. In determining whether these instructions are supported by the record evidence, we must consider the evidence in the light most favorable to the respondent, together with all favorable and reasonable inferences to be drawn therefrom. Rose v. St. Louis Public Service Company, Mo.Sup., 205 S.W.2d 559; Rothe v. Hull, 352 Mo. 926, 180 S.W.2d 7; Poague v. Kurn, 346 Mo. 153, 140 S.W.2d 13.
Instruction 4, given on behalf of respondent, reads: "The Court instructs the jury that if you believe and find from the evidence that on the occasion in question the driver of a truck loaded with gasoline approached the grade crossing described in the evidence from the side of defendant's fireman, Harry William Rhinelander, and that at said time and place said truck driver operated said truck and approached said crossing at a high rate of speed and in a negligent and careless manner and thereby caused said truck to collide with the locomotive with great force and violence, and that said collision was not caused in whole or in part by negligence on the part of the defendant or any of its employees other than its said fireman, Rhinelander, then you are instructed that plaintiff is not entitled to recover on any theory of the case and your verdict should be for the defendant."
On behalf of appellant the court gave instruction VII. It reads: "The Court instructs the jury that if you find that the defendant railroad was negligent in that respect submitted to you in Instruction No. 2, and that such negligence directly contributed in whole or in part to cause the death of Harry Rhinelander, and that plaintiff herein is his widow, then and in that event the plaintiff as his personal representative is entitled to recover damages even if the deceased fireman or the deceased truck driver or both of them were also negligent in some respect directly contributing to cause the collision mentioned in evidence."
The negligence stated in instruction II was that the engineer "failed to give any warning signal of the approach, proximity and movement of said locomotive to and towards said crossing."
The words used in instruction 4 merely negatived the submission made by instructions II and VII given at appellant's request. Instruction 4 was a substantial converse of appellant's instructions. Both the engineer and the head brakeman testified that a warning was given of the approach of the train toward the crossing in question. The jury had a right to believe these two witnesses, even though several of appellant's witnesses testified they heard no such warning. Instruction 4 merely presented in a negative way the same facts *658 which appellant presented in an affirmative way. "A plaintiff cannot complain of an instruction which only presents the defendant's side of the case and in the same view of the law." Woehler v. City of St. Louis, 342 Mo. 237, 114 S.W.2d 985, loc. cit. 987; Womach v. City of St. Joseph, 168 Mo. 236, 67 S.W. 588.
Appellant contends that instruction 4 denies a recovery if the deceased fireman was guilty of contributory negligence. Of course, if appellant is correct in her contention, then instruction 4 is erroneous because contributory negligence is no defense under the Federal Employers' Liability Act. 45 U.S.C.A. § 51. However, this instruction does not bar a recovery even if the deceased fireman was guilty of contributory negligence. In appellant's brief she concedes that under the Federal act, as in Missouri, that if the death or injury was caused solely by the negligence of a third party or of the plaintiff, then, of course, the plaintiff cannot recover, citing our case of Kenefick v. Terminal R. Ass'n of St. Louis, Mo.Sup., 207 S.W.2d 294. It bars a recovery (1) if the collision was caused only by the truck driver's negligence, and (2) if the negligence of the deceased fireman was entirely responsible for the collision. But the instruction made a further finding necessary before the jury could return a verdict for respondent; it required a further finding "that said collision was not caused in whole or in part by negligence on the part of the defendant or any of its employees other than its said fireman."
This instruction presented respondent's "side of the case and in the same view of the law", Woehler v. City of St. Louis, supra, as appellant's instructions II and VII. Appellant's instruction II required the jury to find that the engineer failed to give any warning signal of the approach of the locomotive toward the crossing. Respondent's instruction 4 required a finding not only that the engineer was not negligent, but also that no other employee of respondent was negligent save the deceased fireman. Appellant's instructions II and VII use the phrase, "directly contributed in whole or in part," and, therefore, it could not be error for the respondent to use a converse of the same phrase used by appellant, which was "that said collision was not caused in whole or in part" by respondent. Under these circumstances, the appellant is in no position to complain. Woods v. Southern Ry. Co., Mo.Sup., 73 S.W.2d 374. Instruction 4 clearly shows that appellant was not barred from a recovery if the deceased fireman was merely guilty of contributory negligence and that the respondent was not negligent.
Appellant also contends that instruction 4 failed to call for sufficient findings of fact, in other words, that it deals with abstract legal statements instead of hypothesizing sufficient facts. Of course, this is not a sole cause instruction, as contended by appellant. It is a converse instruction as it does not submit an affirmative defense. It, therefore, is not necessary to submit facts as it is in a sole cause instruction. Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S.W.2d 562.
In our recent case of Oshins v. St. Louis Public Service Company, Mo.Sup., 254 S.W.2d 630, 631, at defendant's request the following instruction was given: "The court instructs the jury that if you find and believe from the evidence that at the time and place in question the bus mentioned in the evidence was not being operated at a high and excessive rate of speed under the circumstances then and there existing, then your verdict should be against the plaintiff and in favor of the defendant." In that case the plaintiff contended that under Yates v. Manchester, 358 Mo. 894, 217 S.W. 2d 541, the instruction was erroneous, but we approved the instruction as it was a converse of plaintiff's recovery instruction. this same contention is made in the case at bar. It is without merit.
We have already held that instruction 4 is not a sole cause instruction but a converse instruction; therefore, it was only necessary to negative appellant's instruction. The other assignments of error that deal with a sole cause instruction are not applicable and will not be discussed. Branson v. Abernathy Furniture Co., supra; Oshins v. St. Louis Public Service Co., supra. We hold that that instruction does *659 not permit a verdict for respondent if the deceased fireman had been guilty of contributory negligence.
Appellant also contends that there is no evidence to support the statement in instruction 4 that "at said time and place said truck driver operated said truck and approached said crossing at a high rate of speed and in a negligent and careless manner."
Head brakeman Jackson testified that when he first saw the truck, the train was between a "quarter and a half mile" away from the crossing in question, and that the train was going between 20 and 25 miles an hour; that at that time the truck was between a quarter and a half mile away from the crossing but farther away than the train, and that the truck was traveling 30 to 35 miles an hour. Since a collision occurred at the crossing between the train and this truck, we think this is substantial evidence for the jury to infer that the truck continued at that rate of speed, even if this witness did not see the truck later. If the speed of the truck had been increased or decreased to any degree, then the truck would have crossed over the railroad crossing before the train did or would not have been at the crossing at the time the train reached it.
Further, even if there was no substantial evidence as to the speed at which the truck was being driven and that it was being driven in a careless and negligent manner, the error was not reversible because this issue was submitted in the conjunctive with the issue that the collision was not caused in whole or in part by the negligence of the respondent. The issue in this case was whether or not the engineer gave a warning signal of the approach of the train as it came toward the crossing, that being the only assignment of negligence submitted by appellant. If the engineer did not give such a warning, then the verdict should have been for the appellant, but if he gave a warning, then the verdict should have been for the respondent. When instructions II, VII, and 4 are read together, there can be no doubt that this issue was clearly presented to the jury.
"We have said `it has long been settled that instructions must be read and construed together and "that where a series of instructions, taken together, contain a complete exposition of the law, and cover every phase of the case, the verdicts obtained thereon will be sustained, even though the instructions, when taken separately, may be incomplete, and open to objection and criticism."' McDonald v. Kansas City Gas Co., 332 Mo. 356, 59 S.W.2d 37, 40." Griffith v. Gardner, 358 Mo. 859, 217 S.W.2d 519, loc. cit. 526. See, also, Hilton v. Thompson, 360 Mo. 177, 227 S.W. 2d 675; West v. St. Louis Public Service Co., 361 Mo. 740, 236 S.W.2d 308. We hold that instruction 4 is free of error.
Instruction 5 was given at the request of the respondent. It reads: "The Court instructs the jury that if you find and believe from the evidence that it was the duty of Harry Rhinelander, as fireman of defendant's locomotive to keep a lookout ahead and to the side of said locomotive from his appointed place on said locomotive and to warn the engineer of the approach of the truck loaded with gasoline and to warn the driver of said truck of the presence of the locomotive and train and that the said Harry Rhinelander failed to look and failed to warn the engineer and the driver of the truck and that collision between the locomotive and the truck loaded with gasoline resulted solely from Mr. Rhinelander's failure to so warn the driver of the truck and the engineer, and did not result in whole or in part from a failure of the defendant's engineer to sound a whistle at least eighty rods or 1320 feet from the crossing mentioned in evidence, then your verdict should be for the defendant and against the plaintiff."
Appellant contends that this instruction is erroneous because it assumes that the deceased fireman had an "appointed" place where he could see the approaching truck, although there was evidence that he had other duties which would take him away from his window in the cab of the engine. We do not think this instruction makes any such assumption. It required the jury to find that it was the deceased *660 fireman's duty to keep a lookout for the approach of the truck.
However, the only reasonable inference from the evidence is that the deceased fireman was in his seat on the left side of the cab of the engine where he could have seen the approaching truck.
The engine was a steam engine which was heated with oil, and to keep the steam up the fireman could regulate a valve that controlled the fire from his seat in the engine. In fact, he could tend to all his duties from his seat except when it was necessary to put sand in the firebox to clean out the flues of the engine.
Omie R. Wilson, a former engineer of respondent's, testified as an expert witness as follows:
"Q. * * * Now, does the fireman have any particular duties when trains are approaching a crossing? A. Somebody is supposed to keep a watch on both sides of the locomotive approaching grade crossings.
"Q. All right. Does a fireman have other duties at crossingswhat are the fireman's regular duties with regard to grades A. The fireman has to fire the locomotive all the time, whether there is a grade or not."
We have just stated that the oil valve was controlled from the fireman's seat and, of course, he would not have to leave his seat to fire the engine.
Wilson further testified:
"Q. (By Mr. Hullverson): Now, the fireman does not do anything on the locomotive except under orders of the engineer, is that it? A. The fireman isn't supposed to."
There is no evidence in this record that the deceased fireman was ordered by the engineer to do anything after the train left the last station, Bessie, Oklahoma. In fact, the only evidence which was given by respondent's engineer was that the deceased fireman was on his seat as they left the station of Bessie, that he may have seen him between that time and when the collision. occurred, but he did not know just where he was at the time of the collision. Under this record, the only reasonable inference that could be drawn is that the deceased fireman was on his seat in the cab of the engine. It would be mere speculation to say he could have been on the floor of the cab putting sand in the firebox. The head brakeman testified that whenever sand was put in the firebox that it was necessary to close the door to the "dog house" in which he rode to keep the sand from flying on him, and that no sand came in the "dog house" as the train approached the crossing in question. So if the instruction did assume the fireman was in his "appointed place," it would not be error for the reason that under this evidence he could only be on his seat on the left side of the cab. Moreover, the appellant's instruction XV told the jury "that the court in giving you these instructions does not intend to assume as true any fact referred to therein, since it is your province and yours alone to decide issues of fact." Under the circumstances, the criticism leveled at this instruction is without merit. Mastin v. Emery, Bird & Thayer Dry Goods Co., 236 Mo.App. 487, 140 S.W.2d 720.
Appellant also contends that this instruction is erroneous as it "imposed an absolute duty upon Rhinelander, the fireman, to look, see and warn." Assuming that this is true, it is supported by the appellant's own evidence. We have already quoted from appellant's witness Wilson, wherein he testified that the fireman must do what he is directed to do and that someone must look from both sides as the locomotive approaches the grade crossing. There were only the engineer and fireman on this locomotive as it approached the crossing in question. Moreover, there was testimony that because of the boiler of the engine, the engineer could not see the left side of this crossing when he came within one-quarter of a mile of it. This assignment of error is without merit.
We have already held that since there was evidence that the truck was going 30 to 35 miles an hour when seen by the head brakeman and the train was going 20 to 25 miles an hour, and the train was closer to the crossing at that time than the truck, and a collision took place between the truck and the train, these facts are sufficient for *661 the jury to find that the truck continued to travel at that rate of speed, otherwise, the collision would not have taken place. Under these circumstances, the jury could properly find that if the fireman had used the emergency whistle, as there was one on his side of the cab, it would have attracted the attention of the driver of the truck, even if the truck driver was inattentive to the whistle blown by the engineer.
We will repeat that the evidence was that the engineer could not see the left side of the crossing when he was within onequarter of a mile of it on account of the boiler of the engine. Since the jury's verdict was for respondent, we must take this evidence as true. It necessarily follows from the facts in evidence that unless warned by the fireman, the engineer had no reason to give any emergency warning or to try to stop the train. He did his duty by giving a warning of the approach of the train toward this crossing.
Appellant also contends that this instruction is in conflict with appellant's instruction II, as instruction 5 submitted the Oklahoma statutory warning while appellant's instruction submitted the engineer's common-law duty to warn. This same assignment of error is made to instruction 6 which was given at the request of respondent. This issue will be discussed in connection with the assignment of error in giving instruction 6.
Appellant contends that instruction 5 defeats a recovery if the deceased fireman was guilty of contributory negligence in failing to keep a lookout and warn of the approaching train. We do not agree with this contention. It plainly states that the collision did not result in whole or in part from the failure of the engineer to sound the whistle.
Instruction 6 reads: "The Court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in the evidence the defendant's engineer rung the bell or sounded the steam whistle on the locomotive at a distance of at least eighty rods or 1320 feet from the place where the railroad crossed the county road mentioned in evidence, then your verdict should be for the defendant and against the plaintiff, and this is true even though you believe that Harry Rhinelander was injured and subsequently died from said injuries."
This instruction complies with Title 66, section 126, of the Oklahoma Statutes Annotated, which is as follows:
"A bell of at least thirty pounds weight, or a steam whistle, shall be placed on each locomotive engine, and shall be rung or whistled at the distance of at least eighty rods from the place where the said railroad shall cross any other road or street, * * * and shall also be liable for all damages which shall be sustained by any person by reason of such neglect."
It is the appellant's contention that she submitted her instruction upon common-law negligence in failure to warn the truck driver of the approach of the train toward the grade crossing where the collision occurred.
The only instruction that submitted appellant's theory of warning is her instruction II, the essential part of which is: "* * * that means of giving a warning signal were within his reach and control, and that he was under a duty as the defendant's engineer upon said locomotive to sound a warning signal of the approach of his train to the road crossing mentioned in evidence, and that he failed to give any warning signal of the approach, proximity and movement of said locomotive to and towards said crossing, and that in so failing he failed to exercise ordinary care and was negligent, then you are instructed that the defendant railroad was negligent and liable for his failure to give such warning signal, and if you further find that such negligence directly contributed in whole or in part to cause the collision mentioned in evidence, * * *." (Italics ours.)
In the case of Hoelzel v. Chicago, R. I. & P. Ry. Co., 337 Mo. 61, 85 S.W.2d 126, loc. cit. 129, the instruction charged "`That he [the engineer] neglected to cause said whistle to be sounded as above stated and that same was not sounded, and that he neglected to cause said bell to be rung as above stated and that same was not rung, and if you further find and believe that such *662 neglect, if any, was a proximate cause of the truck in which plaintiff was riding being struck on said crossing and of plaintiff being struck and injured.'" We held that that instruction was one based upon our statute and not on common-law warning. We held that "Under the common law it is the duty of a railroad and its engineer in charge of an engine approaching a public crossing to exercise ordinary care to prevent injury to persons or property on or dangerously near such crossing. The statute providing for the giving of crossing signals by bell or whistle did not repeal the common law, but is merely cumulative of the common-law duty to exercise ordinary care."
The appellant's instruction II uses the words, "any warning," which would include either ringing the bell or blowing the whistle. The language used in this instruction is very similar to the language just quoted from the Hoelzel case, supra, and since it does not require a finding of any peculiar circumstance where a whistle or an emergency whistle was required separate and apart from the observance by respondent of its optional statutory duty to ring a bell or to give the customary warning, we are inclined to hold this instruction is one that follows the Oklahoma statute. Sisk v. Chicago, B. & Q. R. Co., Mo.App., 67 S.W. 2d 830.
Even if we are wrong in our view and it is a common-law submission, the appellant is not prejudiced because her instruction uses the words, "failed to give any warning," and that would include both statutory or common-law warning of either ringing a bell or blowing a whistle.
There was ample evidence that the whistle was blown at intervals for the last quarter of a mile before the collision, and also that the bell was continuously rung during that distance. Appellant plead, offered in evidence and referred to the Oklahoma statute in arguing the case to the jury.
The appellant's only theory of this case was that the engineer failed to give any warning of the approach of the train toward the crossing in question. She did not submit the case on the theory that the engineer should have given an emergency warning. The evidence would not justify such warning by the engineer as he could not have seen the left side of the crossing on account of the engine boiler.
Finding no prejudicial error in this record, the judgment should be affirmed. It is so ordered.
All concur.