Leonard TERRY, Respondent,

v.

BOSS HOTELS, INC., a Corporation, Appellant.

No. 50038.

Supreme Court of Missouri,

Division No. 1.

Jan. 13, 1964.

Motion for Rehearing or to Transfer to Court En Banc Denied Feb. 10, 1964.

Hendren & Andrae, by John E. Burruss, Jr., and Kenneth W. Shrum, Jefferson City, for appellant.

Bond & Dominique, John O. Bond, P. Pierre Dominique, William A. Jolley, Jefferson City, for respondent.

HOUSER, Commissioner.

Action for $40,000 damages for personal injuries brought by Leonard Terry against Boss Hotels, Inc., owner and operator of Missouri Hotel in Jefferson City. There was a jury verdict for defendant. A new trial was granted for error in giving Instruction No. D–4. Defendant has appealed.

Plaintiff, a member of the Optimist Club, attended a dance given by the club in the ballroom of the hotel. The club hired an orchestra and paid the hotel a rental charge for the use of the ballroom. Defendant provided waiters to serve club members and their guests. A hotel employee, who had standing instructions with reference to the preparation of the ballroom floor for dancing, sprinkled Johnson's powdered dance wax out of a shaker. The floor was hard, nonporous terrazzo, polished to a fine glaze. Too much wax was applied to the floor, as a result of which the floor (as described by various witnesses) was unusually, awfully, exceptionally, extremely, slick and slippery. It was "overslick"—"definitely too slick for comfort"—"entirely too slippery to dance." People were having a difficult time dancing; "having a hard time standing up" because of the floor; were complaining about it being too slick. Several people slipped and fell and were seen picking themselves up off the floor. The slippery condition of the floor became the general topic of conversation. Four people fell during the first two or three pieces the orchestra played. Complaint was made to the hotel manager, who was warned that somebody was going to get hurt. After the third dance the manager ordered the floor swept with push brooms, after which wax was piled up around the edges of the dance floor. Later there were complaints that the floor was still too slippery. The manager then had the floor mopped with damp mops. The floor was still too slick, so it was damp-mopped a second time. Approximately ten persons fell on the dance floor between the time the dance started at 9 p. m.

and the second damp-mopping. Plaintiff fell and sustained injuries to his left knee and ankle during the fourth dance, after the sweeping of the floor but before the first damp-mopping.

Plaintiff testified that the floor was slick "to start with" and that during the second dance he had some difficulty. Plaintiff knew the floor was slick; saw several people picking themselves up off the floor prior to his fall; noticed spots "so bad" he "tried to dance around certain areas" where there was "a lot of wax"; testified that there was "danger of falling * * * after the way they had that wax bunched up"; that "everybody was sliding and slipping." He testified by deposition that he could tell there was danger of falling from the way the other people "were reacting," from the way his own feet "were slipping," and the way his dancing partner was slipping. Plaintiff testified that there were "gobs" or "puddles" of wax located along the edge of the floor, next to the tables. When they swept up the wax plaintiff assumed they helped the condition; assumed that they had taken off most of the wax, but as plaintiff and the lady with whom he danced the fourth dance "started up" he knew there was "too much wax on there." Plaintiff and his partner talked about the condition of the floor, and when they found out there was too much wax; that it "wasn't fit to dance"; that it was "too slick to dance"; that "there was still danger of falling," they decided they would quit dancing and go sit down. According to his dancing partner they were still dancing at the time they slipped and fell; they were on their way back to the table, but still dancing. Another witness for plaintiff saw plaintiff fall. Asked where he fell she testified plaintiff "was dancing on that side by those tables." A witness for defendant testified unequivocally that plaintiff was dancing at the time he fell. At the trial plaintiff testified that they had stopped dancing and were walking at the time they fell, but also testified that after his dancing partner said "It is slippery. We better sit down," he

agreed with her and that they started to dance back towards the table and were about fifteen feet away from their table when they fell. He testified "We turned around to dance toward the tables. Mrs. Rusk slipped and I was trying to hold onto her, at the same time I slid underneath her, and she fell on top of me." Further: "I didn't want to take any chances, so I tried to maneuver Mrs. Rusk back to the tables through this wax, so we could avoid stepping in it or dancing in it * * * [g]uiding her off the dance floor * * *."

"Q. How did you get over there [to the side of the tables], sir? A. We danced up that far.

"Q. You danced over there, sir? A. That's right. We started out right where we were sitting, danced over in front of the band, right straight across the floor, going south, danced about halfway across from our tables—I would say fifteen or twenty feet from where we sat down, turned around and headed back for it. That is where the accident happened.

"Q. Then you decided it was too slick for you to dance, you started dancing back over toward your table, is that right, sir? A. Danced over to the side.

"Q. Over to that side of the room, is that right, sir? A. That's right.

"Q. Then you were dancing after you had decided it was too slick? A. Well, we had to dance to find out, that is why we decided to sit down, when we tried a few steps and found it too slick, and headed back for the table. * * * We wanted to get out of the immediate dance floor area, so we danced over to the side, over toward the wall, right close to the entrance. * * *

"Q. In other words, Mr. Terry, when you decided that it was too slick to dance any longer, you danced in a northerly direction over toward the north wall of the ballroom; is that right? A. Right."

In his deposition plaintiff testified "That's right" in answer to the question "You were on your way back, dancing to the table, when you had your accident, is that right?"

Instruction No. D–4, for the giving of which a new trial was granted, follows:

"The Court instructs the jury that under the law plaintiff, Leonard Terry, was required to exercise ordinary care for his own safety while attending and participating in the dance sponsored by the Jefferson City Optimist Club on December 9, 1960, at the Missouri Hotel.

"Therefore, if you find and believe from the evidence that plaintiff, Leonard Terry, knew or should have known that the floor of the ballroom of said hotel was slippery and that there was danger of falling while dancing thereon, if you so find; and that thereafter plaintiff, Leonard Terry, danced and continued to dance on said ballroom floor, if you so find; and that in so doing plaintiff, Leonard Terry, failed to exercise ordinary care for his own safety and that such failure, if any, directly caused or contributed to cause his injuries, if any, then, your verdict must be in favor of the defendant and against the plaintiff, and this is true even though you find and believe from the evidence that the defendant was guilty of negligence."

Plaintiff attacks D–4 on three grounds.

First, it is objected that instead of directing a verdict for defendant if plaintiff knew or should have known that the ballroom floor was slippery and there was danger of falling while dancing thereon D–4 should have required a finding that plaintiff knew or by the exercise of ordinary care should have known *that there were excessive collections of wax upon the floor, so as to cause the floor to be dangerous and unsafe for dancing;* that D–4 is confusing because the jury might have found the floor somewhat slippery but not slippery enough for persons using ordinary care to refuse to use the floor. This objection is not well taken. The finding required by D–4 is tantamount to the substitute finding suggested by plaintiff. The words "and that

there was danger of falling while dancing thereon, if you so find," save it from criticism that it was confusing on the ground assigned.

■ Next, it is objected that D–4 places an absolute duty on plaintiff to discover that the floor was slippery, by directing a verdict based on a finding that plaintiff "should have known" of the slipperiness and danger, whereas plaintiff was only obligated to use ordinary care to discover that the floor had excessive amounts of wax applied to it in time to have avoided the accident. Plaintiff testified positively that the floor was slick from the start; that he saw several people picking themselves up off the floor prior to his fall; that he saw accumulations of wax and knew there was danger of falling "after the way they had that wax bunched up." This is a concession of actual, personal knowledge of the fact that there were excessive accumulations of wax on the floor and that the floor was dangerous for dancing. In this situation the submission of constructive knowledge, in whatever form, is not essentially important for it is obvious that no jury would have considered whether plaintiff could, should or in the exercise of ordinary care would have discovered the condition, where plaintiff himself conceded that he *did* make the discovery and *did* appreciate the danger. If the inclusion of the language objected to may be said to have constituted error it was harmless. See Gould v. Chicago, B. & Q. R. Co., 315 Mo. 713, 290 S.W. 135, Keynote 4, pp. 138, 139.

■ Plaintiff objects, however, that his positive testimony as to knowledge of the accumulations of wax and of the danger related to the situation which existed *before the wax was swept off the floor;* that when the wax was swept off the floor he assumed and had every right to assume that the floor had been made safe, and that he did not discover that excessive amounts of wax were still on the floor "until he was in the crowd," dancing; that when he made the discovery he and his partner edged and maneuvered themselves out of the crowd

and started walking to their table, and that it was only then that he fell. This ignores plaintiff's testimony that as he "started up" the fourth dance, in the course of which he fell, he knew there was too much wax on the floor and that there was danger of falling, but nevertheless continued to dance. If we accept the premise that the sweeping of the floor constituted an assurance of safety to plaintiff and a justification for his assaying to dance on the ballroom floor, plaintiff is yet confronted with the fact that the first paragraph of D–4 and the words following the second semi-colon of the second paragraph make it clear that the jury was properly instructed as to the duty of care plaintiff was obliged to exercise. In the first paragraph the jury was told that plaintiff was required to exercise ordinary care for his own safety while attending and participating in the dance, which would include his movements after the sweeping up of the wax as well as before. Again, following the second semi-colon of the second paragraph the jury was instructed as to the result if plaintiff failed to exercise ordinary care for his own safety "in so doing" (i. e., in continuing to dance with knowledge of the condition and danger). A jury of ordinarily intelligent laymen, considering the instruction as a whole, Knox v. Weathers, 363 Mo. 1167, 257 S.W.2d 912, 916; Pohl v. Kansas City, Mo.Sup., 238 S.W.2d 405, 406, would not conclude from it that plaintiff was under an absolute duty to know of the condition and danger. Furthermore, plaintiff's main verdict-directing Instruction No. P–1 required a finding that *at the time plaintiff fell he was using ordinary care for his own safety.* Instruction No. D–8 directed a verdict for defendant if plaintiff assumed the risk, even though the jury should find that defendant was negligent as set out in other instructions, and that *plaintiff was exercising ordinary care for his own safety* at the time and place in question. Instruction No. D–2 defined the words "ordinary care." When all of the instructions were read together and as an entirety, as it was the duty of the jury to do, there was no danger of prejudice to

plaintiff in the manner suggested. An ordinarily intelligent jury would understand that the law of this case imposed upon plaintiff no greater duty than that of ordinary care. Warren v. Kansas City, Mo.Sup., 258 S.W. 2d 681; Elmore v. Kansas City, Mo.App., 333 S.W.2d 795.

■ Lastly, it is objected that D–4 erroneously assumes it was negligent for plaintiff to dance on the slippery floor, instead of requiring the jury to find that this was negligence. A reading of the instruction demonstrates the contrary. The words "and that in so doing [continuing to dance with knowledge of the slipperiness of the floor and of the danger of falling] plaintiff, Leonard Terry, failed to exercise ordinary care for his own safety * * *" save it from this criticism.

Other errors in D–4 charged in plaintiff's motion for new trial but not carried forward in plaintiff's brief and argument have been considered, as have eight cases cited in plaintiff's brief in its attack upon the instruction. Without elaborating or unduly extending this opinion by a case-by-case analysis we hold this instruction not erroneous for any of the assigned reasons.

Plaintiff seeks affirmance of the order granting a new trial on the basis of other alleged errors. Cantwell v. Zook, Mo.Sup., 250 S.W.2d 980.

Plaintiff impugns Instruction No. D–3:

"The Court instructs the jury that if you find and believe from the credible evidence that plaintiff, Leonard Terry, was not injured as a direct and proximate result of any negligence on the part of defendant, then your verdict must be in favor of defendant and against plaintiff, Leonard Terry."

■ Plaintiff contends that D–3 is general in nature; a mere statement of an abstract legal proposition; that it fails to hypothesize the specific facts required to be found to bring in a verdict for defendant,

and permits the jury to find contributory negligence for any conceivable reason even though without the scope of the pleadings or evidence. Plaintiff's case against defendant, as submitted in his verdict-directing Instruction No. P–1, was negligent application of excessive amounts of wax upon the dance floor making it unsafe and dangerous for dancing purposes at the time plaintiff fell. D–3, which negatived plaintiff's injury and proximate causation, was a converse of P–1. In Rhinelander v. St. Louis-San Francisco Ry. Co., Mo.Sup., 257 S.W.2d 655, [2], the negligence submitted was failure to give a warning signal of the approach, proximity and movement of the locomotive to and towards the crossing. Instruction 4 directed a verdict for defendant upon a finding, inter alia, that the collision "was not caused in whole or in part by negligence on the part of defendant * * *." Here, as there, the instruction attacked presented defendant's "side of the case and in the same view of the law." "[A] plaintiff cannot complain of an instruction which only presents the defendant's side of the case and in the same view of the law." Woehler v. City of St. Louis, 342 Mo. 237, 114 S.W.2d 985, 987. The failure to hypothesize facts in this converse instruction was not error. Plaintiff cites several cases holding that defensive instructions must hypothesize facts, but all of them except Herr v. Ruprecht, Mo.Sup., 331 S.W.2d 642, involve sole cause instructions, in which a different rule applies. "A converse instruction by nature does not call for hypothesization of facts to show the injuries of plaintiff resulted from the fault of someone else as in a sole cause instruction." 1 Raymond Missouri Instructions, 1963 Cumulative Pocket Part, § 40, p. 23; Happy v. Blanton, Mo.Sup., 303 S.W.2d 633; Terrell v. Missouri-Kansas-Texas R. Co., Mo.Sup., 327 S.W.2d 230; Rhinelander v. St. Louis-San Francisco Ry. Co., supra, 257 S.W.2d, l.c. 658, [5]; Missouri Bar Continuing Legal Education Handbook, "Missouri Civil Instructions," § 14.9 p. 214. The Herr citation relates to a hypothesis of facts in a plaintiff's verdict-directing in-

struction, and has no bearing on the instant question. We find no error in D–3.

Next, plaintiff excepts to Instruction No. D–5:

■ "The Court instructs the jury that, in deliberating upon this case, it is your duty to decide first whether or not under all the facts and circumstances in evidence, under the instructions of the Court, plaintiff is entitled to recover against defendant. Until this question has been determined by you, you have no right to consider the amount, if any, of plaintiff's damages."

Plaintiff maintains that D–5 denied the jury the right to consider the nature and extent of plaintiff's injuries in determining if defendant was negligent, and invaded the province of the jury. In West v. St. Louis Pub. Serv. Co., 361 Mo. 740, 236 S.W.2d 308, [1, 2], an instruction analogous in every respect to D–5 was challenged on the same principal ground, and the instruction was vindicated for reasons fully applicable and which need not be parroted here.

Plaintiff seeks to impeach Instruction No. D–6:

■ "The Court instructs the jury that this case should be considered by the jury the same as if it were a contest between two persons of equal standing in the community. The fact that one of the parties is a corporation should not affect your minds in any way, but the right of the parties should and must be determined upon the evidence introduced in the case and the Instructions given to the jury, which is the law, and only law to guide you in your deliberations.

"The Court further instructs the jury that, in considering what your verdict will be, neither passion, prejudice, sympathy nor the relative condition of the parties to the suit should influence you in any manner in deciding this case, for it is your sworn duty to lay aside all such feelings and be governed solely by the evidence as you have heard it in the trial and the law contained in the Instructions."

Plaintiff contends D–6 is a comment on the evidence and misdirects the jury by requiring the jury to ignore the fact that plaintiff received serious, permanent injuries, citing Frye v. Baskin, 241 Mo.App. 319, 231 S.W.2d 630, [17], but we hold that a direction to ignore the relative condition of the parties to the suit is not a direction to ignore the fact of the injury. The Frye case, which involves the refusal of the court to give an instruction of this general type but different in language under the quite different factual situation of that case, is not persuasive.

■ Plaintiff contends that the reference in the first paragraph of D–6 to the standing and relative condition of the parties is erroneous because defendant was a business invitor and that as such it had superior knowledge of the condition it created; that this is a matter which the jury should have been allowed to consider but was prohibited from considering by reason of the foregoing reference. To instruct the jury that the parties are of equal standing in the community and before the court and that the jury is not to be influenced by the relative condition of the parties is not tantamount to an instruction not to consider the superior knowledge of the business invitor or its employees that dangerous amounts of wax had been left on the floor. We find no such relation between these two concepts as to cause any jury to blend and confuse them to the prejudice of the plaintiff. The first paragraph of D–6 was approved in Feary v. Metropolitan St. Ry. Co., 162 Mo. 75, 62 S.W. 452, 458, [4], and we find no error in giving it under these circumstances.

■ Plaintiff contends that the second paragraph of D–6 suggests that only through passion or prejudice against defendant or sympathy for plaintiff could the jury find for plaintiff, citing Eisenbarth v. Powell Bros. Truck Lines, 235 Mo.App. 442, 125 S.W.2d 899, 904. Substantially the same matter contained in the second paragraph of D–6 was contained in the third

paragraph of Instruction No. 5 in Lukitsch v. St. Louis Pub. Serv. Co., 362 Mo. 1071, 246 S.W.2d 749, 755, [8]. The giving of No. 5 containing that matter was upheld in that case as properly within the trial court's discretion. In this case we rule the same way, for the same reason.

 Instruction No. D–7 is the object of plaintiff's next complaint: "The Court instructs the jury that in determining the amount of damages, if any, to which plaintiff is entitled you may not consider as an element of such damages, if any, the following items:

"1. Future medical expense.

"2. Past loss of wages.

"3. Future loss of wages."

Plaintiff complains that D–7 erroneously told the jury plaintiff was not entitled to any compensation for future loss of wages and erroneously withdrew consideration of future medical and hospital expense. Since there was a verdict for defendant these points would not entitle plaintiff to a reversal of the judgment, even if meritorious. Conceding this, plaintiff suggests that "a warning is in order in case of a new trial," but our ultimate ruling will not involve remand for a new trial.

Instruction No. D–8 is attacked as harmful and erroneous. D–8 is an instruction on the defense of voluntary assumption of risk, or "incurred risk" as it is sometimes designated. By it the jury was instructed that if plaintiff knew the floor was slippery and there was danger of falling while dancing thereon and that plaintiff *thereafter voluntarily chose to continue to dance on the ballroom floor,* plaintiff assumed whatever risk existed because of the slipperiness of the floor while dancing, and that if plaintiff assumed the risk the verdict should be for defendant, upon a finding of causation, even though defendant was guilty of negligence and plaintiff was exercising ordinary care for his own safety at the time and place in question.

 Plaintiff claims that D–8 erroneously directs the jury to find plaintiff not entitled to recover even though defendant was negligent and plaintiff was not; that when proof of negligence on the part of defendant appears the defense of assumption of risk "falls out of the case." The rule that whenever proof of negligence appears the defense of assumption of risk disappears is a rule applicable in master and servant cases, as indicated by the cases cited by plaintiff,[1] but that rule has no application in this case. The reason for that rule is that the servant's assumption of risk relates only to those risks usual and incident to the employment, and that he does not assume the risks arising from the master's negligence, a reason not here pertinent. Assumption of risk does not always go out of the case where the issue is one of negligence and contributory negligence, as suggested. Nor is the doctrine invariably limited to cases arising out of a contractual relationship or master and servant cases. It may extend to other cases in which the defense is based upon the principle expressed by the maxim volenti non fit injuria, Fletcher v. Kemp, Mo.Sup., 327 S.W.2d 178, 182; Dietz v. Magill, Mo.App., 104 S.W.2d 707, 711, and cases cited; 65 C.J.S. Negligence § 174, p. 848, and may apply to preclude recovery in negligence cases. Stein v. Battenfeld Oil & Grease Co., 327 Mo. 804, 39 S.W.2d 345; Dietz v. Magill, supra; 65 C.J.S. Negligence §§ 117, 174, pp. 709, 848. In the great majority of negligence cases, however, an instruction on contributory negligence is all that is needed to adequately cover the defendant's rights. In determining whether

1. Bishop v. Musick Plating Works, 222 Mo.App. 370, 3 S.W.2d 256; Schneider v. Southwestern Bell Tel. Co., Mo.App., 354 S.W.2d 315; Page v. City of Fayette, 233 Mo.App. 37, 116 S.W.2d 578;

August Viermann Brick Co. v. St. Louis Contracting Co., 335 Mo. 534, 73 S.W.2d 734; Evans v. General Explosives Co., 293 Mo. 364, 239 S.W. 487; Cathey v. DeWeese, Mo., 289 S.W.2d 51.

to invoke the defense of assumption of risk a defendant in a negligence case should be discriminating and well advised that the case is one for the application of the doctrine, the rationale of which is that one who voluntarily exposes himself to a known and appreciated danger due to the negligence of another may not recover for an injury resulting from such exposure.

While the question is troublesome, we believe there was no error in submitting the issue of assumption of risk in this case and that D–8 is not "unsupported by the evidence." There is evidence that plaintiff voluntarily exposed himself to a known and appreciated danger; that plaintiff knew there was too much wax on the floor when he commenced the fourth dance; that while dancing he and his dancing partner discussed the condition of the floor and concluded that the sweeping of the wax from the floor "didn't do it any good"; that he knew the floor was "too slick to dance" and that there was still danger of falling, even after the sweeping of the floor; that the danger was so evident and imminent that they decided to dance over to their table and sit down, *but nevertheless plaintiff continued dancing and danced until the time he fell.* See Paubel v. Hitz, 339 Mo. 274, 96 S.W.2d 369; Wagner v. Lone Star Gas Co., Tex.Civ.App., 346 S.W. 2d 645. Under these circumstances plaintiff reasonably could be found to have assented to the danger, thereby relieving the defendant of any liability for his injuries. Our limited ruling is not intended to encourage the submission of instructions on assumption of risk in the average negligence case. The circumstance in which reliance on the doctrine of assumed or incurred risk will be approved are exceptional.

Plaintiff claims that D–8 is in direct conflict with P–1 in that it denies recovery even though defendant was negligent and even though plaintiff was using ordinary care, so that the jury was con-fused and confounded by the two instructions. P–1 authorized a verdict for plaintiff if at the time he fell he was using ordinary care for his own safety and that he fell because of the negligence of defendant in applying excessive amounts of wax upon the dance floor, making it unsafe and dangerous for dancing purposes. P–1 concluded with these words, "unless you find for the defendant, Boss Hotels, Inc., a Corporation, under Instruction No. D–8 given you herewith." We find no inconsistency or lack of harmony between D–8 and P–1. Dietz v. Magill, supra. The giving of D–8 did not prevent the jury from considering the negligence of defendant, under P–1, but if the jury found the facts submitted in D–8 the result would be the same as if plaintiff had consented to relieve defendant from performing the duty otherwise owing to him.

Finally, plaintiff makes the point that the court erred in refusing to permit plaintiff's counsel to state to the jury that it did not matter whether plaintiff was dancing or walking at the time of his injury, and erred in other rulings during argument. Although this point was properly made under "Points and Authorities" in plaintiff's brief we deem it to have been abandoned because it was not supported by the citation of authorities on the question, and was not developed or even referred to in the "Argument" portion of the brief. Lansford v. Southwest Lime Co., Mo.Sup., 266 S.W.2d 564. In spite of the fact that plaintiff, technically speaking, abandoned the point we have considered its effect if it had been properly preserved for review and fully established, and have satisfied ourselves that it would not have affected the final result.

Finding no error in the trial of this case in any manner suggested, and that plaintiff had a fair trial, the order setting aside the verdict and judgment and granting a new trial is reversed and the cause remanded with instructions to reinstate the verdict and judgment for defendant.

CUIL and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.

On Motion for Rehearing and to Transfer

to Court En Banc

PER CURIAM.

Plaintiff asserts in his motion for rehearing and to transfer to the court en banc that the defense of assumption of risk has no place where primary or contributory negligence is present, citing August Viermann Bricklaying Co. v. St. Louis Contracting Co., 335 Mo. 534, 73 S.W.2d 734, decided by Division No. 2. On the ground that our present opinion conflicts with Viermann he urges that it be set aside or the conflict resolved by the court en banc.

It was formerly held that the defense of assumption of risk must rest upon contract and that this defense had no place where negligence, primary or contributory, was present. Under the later cases in both divisions of this court the basis of the doctrine is not contract but *consent* and the doctrine is not limited to master and servant cases or cases arising out of a contractual relationship. Two years after Viermann, Division No. 2 decided Paubel v. Hitz, 339 Mo. 274, 96 S.W.2d 369, an invitee (not master and servant) case in which a postman received a $22,500 verdict for injuries sustained in a fall while delivering mail on a runway leading from the sidewalk to the landowner's place of business, due to the slippery condition of the runway. Pointing out that there was no hidden peril, but an obvious danger actually known and appreciated by plaintiff, and that "whatever risk existed incident to passage over the runway was voluntarily incurred by plaintiff—volenti non fit injuria—and defendant breached no legal obligation owed plaintiff," the court reversed the judgment as a matter of law. We regard Paubel, not Viermann, as the latest controlling decision of Division No. 2 on this subject. We are not in conflict with Paubel. In Stein v. Battenfield Oil & Grease Co., 327 Mo. 804, 39 S.W.2d 345, deceased, an independent contractor, not a servant, was killed while working on defendant's premises. Defendant pleaded that deceased assumed the risk, and plaintiff-widow contended this plea confessed that the relation was master-servant. Division 1 of this Court said: "Furthermore in its broader application the doctrine of assumption of risk, or incurred risk, is not limited to master and servant cases, but may be applied to other relations, * * *." In our recent Fletcher v. Kemp, Mo.Sup., 327 S.W.2d 178, which did not involve a master-servant relationship between plaintiff and defendant, we announced this same rule, that the doctrine of assumption of risk is not confined to master and servant cases, and held that assumption of risk in that negligence case was a jury question (the defense of contributory negligence was also submitted).

Plaintiff is mistaken in urging that the doctrine of assumption of risk falls out of every case where it is shown that defendant is negligent. In many negligence cases assumption of risk may defeat a claim originating in a charge of negligence. For instance a spectator at a ball park is held to assume the risks of a necessary and ordinary incident of the game, Grimes v. American League, Mo.App., 78 S.W.2d 520, l. c. 523; Hudson v. Kansas City Baseball Club, 349 Mo. 1215, 164 S.W.2d 318, 142 A.L.R. 858; a spectator following a golf tournament assumes the risks ordinarily incident to watching such a match, Thompson v. Sunset Country Club, Mo.App., 227 S.W.2d 523; a skater at a skating rink assumes the risks of falling and colliding with other skaters, Reay v. Reorganization Inv. Co., Mo.App., 224 S.W.2d 580; Schamel v. St. Louis Arena Corp., Mo.App., 324 S.W.2d 375; Humbyrd v. Spurlock, Mo.App., 345 S.W.2d 499; a patron at a circus tent assumes all the risks inherent in structures of

that character, King v. Ringling, 145 Mo. App. 285, 130 S.W. 482.

The doctrine of assumption of risk was held applicable to a patron of a restaurant who fell down a stairway leading to the basement, in Dietz v. Magill, Mo.App., 104 S.W.2d 707. The court said, l. c. 711:

"In considering the propriety of the instruction in its relation to the facts in evidence, one may at first be inclined to be confused in that it not only submits the defense of assumption of risk in a case involving neither a master and servant nor any other contractual relationship, but purports to make such defense availing to defendant notwithstanding the fact that the risk assumed was one alleged to have arisen from the negligence of defendant.

"It must be borne in mind, however, that the doctrine of assumption of risk is not invariably limited to cases arising out of a contractual relationship between the parties, but in its broader aspects may extend as well to cases wherein the defense is founded upon the theory of volenti non fit injuria, which means that that to which a person assents is not regarded in law as an injury." Arnold v. May Dept. Stores, 337 Mo. 727, 85 S.W.2d 748, a case of a customer in a beauty shop suing for negligently applying hair dye, in which it was indicated that if the maxim is applicable it could be invoked, was cited.

Missouri has followed the general trend of the decisions in this regard. Cf. Prosser on Torts, 2nd Ed., § 55, p. 309: "It was said in the early decisions that assumption of risk will not be found apart from a contract relation of the parties. It is now recognized, however, that the basis of the defense is not contract but consent, and that it is available in many cases where no contract exists. It is also said on occasions, particularly in employment cases, that the plaintiff never assumes the risk of the defendant's negligence. Such a statement is a confusion in terms: if the plaintiff consents

to the risk, there is no duty to him, and hence no negligence. The plaintiff does not assume the risk of any negligence which he has no reason to anticipate, but once he is fully informed of it, it is well settled that the risks arising from such negligence may be assumed."

■■ Contributory negligence and assumption of risk are defenses to be pleaded affirmatively. § 509.090, V.A.M.S. They may be pleaded in the alternative. § 509.-110, V.A.M.S. They were so pleaded, in separate paragraphs of defendant's answer, and were submitted to the jury by separate instructions. This case presented a fact situation in which the jury might find for defendant *on the defense of assumption of risk* on the theory that plaintiff, aware of the risk created by the negligence of the defendant, voluntarily encountered it, not negligently but reasonably and with caution because he appreciated the danger, and therefore is to be barred from recovery because the injury he sustained resulted from a "risk which he has accepted and brought upon himself." Prosser, Torts, § 55, p. 304. In such case defendant is under no duty to plaintiff. Or, under the evidence in this case, the jury might find for defendant *on the defense of contributory negligence*, on the theory that "plaintiff's conduct in encountering a known risk is itself unreasonable, and amounts to contributory negligence. There is negligence on both sides; and the plaintiff is barred from recovery, not only by his 'implied consent' to take the chance, but also by the policy of the law which refuses to allow him to impose upon the defendant a loss for which his own fault was at least in part responsible. The plaintiff's conduct in accepting the risk may be unreasonable because the danger is out of all proportion to the interest he is seeking to advance, as where he consents to ride with a drunken automobile driver in an unlighted car on a dark night, or dashes into a burning building to save his hat. Or,

even after accepting a very reasonable risk, he may fail to exercise proper care for his own protection against that risk. *In such cases, both assumption of risk and contributory negligence are available as defenses."* Prosser, Torts, § 55, p. 304. We have quoted and emphasized the language that fits this case.

There was no error in giving Instruction D-8 under the peculiar circumstances of this case, and no error in its form. We find no lack of evidence to sustain the giving of Instruction D-4, as claimed.

The motion for a rehearing and to transfer is overruled.